**S & A MARINAS, INC., Appellant,**

v.

**LEONARD MARINE CORPORATION, Appellee.**

No. 3–93–419–CV.

Court of Appeals of Texas, Austin.

May 4, 1994.

Rehearing Overruled June 8, 1994.

G. Allen Price and Michael A. McLaughlin, Houston, for appellant.

David W. Evans, Dallas, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

█ S & A Marinas, Inc. d/b/a Hurst Harbor Marina appeals from a summary judgment rendered in favor of Leonard Marine Corporation d/b/a Lake Travis Yacht Harbor on S & A Marinas' claim of tortious interference with its alleged contract with the Lower Colorado River Authority (LCRA). We will affirm the summary judgment.

## BACKGROUND

S & A Marinas and Leonard Marine operate neighboring marinas on Lake Travis. Both marinas hoped to expand their facilities by leasing additional land from the LCRA. The marinas' proposed areas of expansion overlapped, so the LCRA could grant only one of the requested leases.

The board of the LCRA passed a resolution authorizing its staff to negotiate and execute a fifteen-year lease with S & A Marinas. The facts most favorable to S & A Marinas indicate that in the months following the resolution, it repeatedly attempted to obtain a final lease and was assured that one was forthcoming, and that the LCRA still planned to lease the tract to S & A Marinas. In the meantime, LCRA staff members negotiated and executed a lease with Leonard Marine, which the LCRA board eventually ratified.

S & A Marinas sued the LCRA and two of its employees individually alleging various causes of action. As part of the same case, S & A Marinas sued Leonard Marine for tortious interference with contractual relations between S & A Marinas and the LCRA. The trial court severed the cause of action against Leonard Marine and rendered summary judgment in its favor. S & A Marinas appeals.[1]

## DISCUSSION

S & A Marinas raises ten points of error. We will address the first two, which argue respectively that there is a genuine issue of material fact regarding the existence of a

---

1. In a cross-point, Leonard Marine contends that this cause should be dismissed because S & A Marinas did not timely perfect its appeal. We disagree for the reasons set out in our November 24, 1993 order overruling Leonard Marine's motion to dismiss the appeal. We overrule Leonard Marine's cross-point.

contract between S & A Marinas and the LCRA, and that the summary judgment evidence did not establish the absence of a contract as a matter of law. The remaining eight points of error are contingent upon our sustaining the first two. Because of our disposition of the first two points of error, we do not address the other eight.

 The dispositive issue in this appeal is whether the resolution authorizing the LCRA staff to negotiate and execute a lease with S & A Marinas constituted a contract between the two entities.[2] It is axiomatic that a cause of action for tortious interference with a contract will not lie in the absence of a contract.[3] *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd). If a trial court can determine conclusively that no contract exists, summary judgment is appropriate. *Gillum,* 778 S.W.2d at 565. S & A Marinas concedes that, if the LCRA had the power, after passing the resolution, to decline to lease it the tract for any reason, the resolution does not constitute a contract. We hold that the wording of the resolution itself conclusively establishes that it is not a contract as a matter of law. To hold otherwise would

contravene public policy allowing governmental agencies to reconsider action taken with respect to a contract not yet finalized.

By its very terms, the LCRA board's resolution is not a final contract insofar as it contemplates further staff action before contractual relations are finalized.[4] Specifically, it contemplates further negotiation between the LCRA staff and S & A Marinas, as well as the execution of a final contract which would be redundant if, as S & A Marinas contends, the resolution itself is a binding contract. S & A Marinas hopes to bring to trial extrinsic evidence of its course of dealing with the LCRA, of the fact that all material terms had been negotiated, and of the existence of a standard LCRA lease form in support of its contention that "authorized to negotiate and execute" really means "instructed to draw up the standard forms for." However, if the terms of a document purporting to be a contract are clear, the document may be construed as a matter of law without reference to such evidence. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518–19 (Tex.1980) (examining the terms of a promissory note and excluding extrinsic evidence as to its meaning).[5]

---

**2.** S & A Marinas does not assert a cause of action for tortious interference with *prospective* contractual relations, which is a valid cause of action that places upon the plaintiff a qualitatively different burden of proof. *See Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 565 (Tex.App.—Dallas 1989, no writ). S & A Marinas' appeal depends, therefore, on a claim that the resolution constituted an existing contract.

**3.** Our disposition of this case does not depend on a determination of whether the "contract" is enforceable. A contract may be the subject of an interference action even though it is unenforceable between the contracting parties. *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 654–55 (Tex.App.—Corpus Christi 1991, writ denied). Instead we must decide whether the resolution constituted a contract at all.

**4.** The resolution reads in pertinent part:
FURTHER RESOLVED that the General manager, or his designee, be and hereby is, authorized to negotiate and execute a fifteen (15) year lease of 9.735 acres, LCRA Tract TS–6, Travis County, to S & A Marinas, Inc. (dba Hurst Harbor Marina) for the continued use and expansion of a commercial marina as recommended in Agenda Item 17 [Exhibit M]; and

FURTHER RESOLVED that the General Manager, officers, and staff be, and they hereby are, authorized and directed to do all things necessary and proper to carry out the terms and purposes of these resolutions.
The agenda item to which the resolution refers states that the annual rent would be reevaluated at five year intervals and that the initial annual rent would be $7,920.

**5.** In *R & P Enterprises,* neither party contended that the note at issue was not a contract, and the case involved merely the construction of the terms of that contract. The rules of construction articulated in that case, however, apply to all written instruments, including the board resolution in this case, and govern the question of whether a contract existed between LCRA and S & A Marinas. *See, e.g., University Sav. Ass'n v. Burnap,* 786 S.W.2d 423, 425–26 (Tex.App.—Houston [14th Dist.] 1990, no writ) (employing *R & P Enterprises* in its examination of whether a savings association's bylaws vested rights of a contractual nature in a director); *Enstar Corp. v. Bass,* 737 S.W.2d 890, 893 (Tex.App.—El Paso 1987, no writ) (citing *R & P Enterprises* in its examination of whether a company policy, as embodied in its written Reserve Incentive Program, created contract rights for its employees).

Furthermore, whether offer and acceptance have occurred is usually a question of law.[6] *See Gilbert v. Pettiette,* 838 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1992, no writ).

■ S & A Marinas correctly states that we must determine whether the LCRA intended to be bound by its resolution. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727–28 (Tex.1981). Although S & A Marinas contends that there is a fact issue with respect to the LCRA's intent, in the ordinary case the writing alone will be deemed to express the presence or absence of intent to be bound. *Id.* at 728; *R & P Enters.,* 596 S.W.2d at 518–19. Only if the instrument is capable of multiple meanings and therefore ambiguous is there a fact issue rendering summary judgment inappropriate. *R & P Enters.,* 596 S.W.2d at 519.[7] Mere disagreement over the interpretation of a document is not enough to render the document ambiguous. *Sun Oil Co. (Delaware),* 626 S.W.2d at 727.

In this case, the resolution is an unambiguous grant of authority. The staff is authorized to negotiate and execute a contract, but is not ordered to do so. The verb "directed" appears in the second, rather than the first, paragraph and cannot be read to refer to "negotiate and execute." Rather, the mandatory language refers to the carrying out of the resolution's terms and purposes which are to *authorize* the staff to negotiate and execute a contract. By its very terms, the resolution delegates the board's discretion in this matter to the staff rather than mandating a course of action. It does not express the LCRA's intent to be bound and is not open to the interpretation that it creates a binding contract.

Our decision is consistent with public policy objectives of preserving the government's ability to reevaluate its decisions before they become final. The LCRA enjoys considerable discretion in the disposition of its own property:

> It has no power to levy taxes, enact laws nor ordinances, as a city has; and its efficient functioning depends in large measure on the sound judgment and good business management of its Board of Directors. They have large control over the operation of its properties, and the income to be derived therefrom, which constitute the only source of revenue to meet its obligations. Of necessity matters relating thereto must be left in large measure to their judgment, experience and discretion....

*Lower Colorado River Auth. v. Chemical Bank & Trust Co.,* 185 S.W.2d 461, 467 (Tex. Civ.App.—Austin), *aff'd,* 144 Tex. 326, 190 S.W.2d 48 (1945). S & A Marinas urges us to hold that a resolution of the LCRA board can, under the proper circumstances, constitute a contract between the LCRA and another party. We decide this issue against a backdrop of strong policy considerations in favor of preserving the LCRA's discretion in this area. The LCRA is bound, of course, by the contracts that it makes, but we are reluctant to expand the definition of a contract in a way that limits the LCRA's ability to reconsider decisions provisionally or tentatively made.

■ The LCRA has the discretion to reconsider an action it has taken with regard to any matter that has not become final. *See*

---

**6.** S & A Marinas contends that the resolution constitutes the LCRA's "acceptance" of S & A Marinas' "offer" as communicated by S & A Marinas through the LCRA staff to the LCRA board.

**7.** S & A Marinas cites *Foreca, S.A. v. GRD Dev. Co.,* 758 S.W.2d 744 (Tex.1988), for the proposition that intent to form a binding contract is a fact issue. However, that case involved the construction of a patently ambiguous phrase ("subject to legal documentation contract to be drafted by [a party's attorney]"), which could be read either as a condition precedent to a contract or as a directive to memorialize an already enforceable contract. *Id.* at 744–45. In other words, *Foreca* states the law applicable to a situation in which the *R & P Enterprises* rules of construction do not resolve ambiguities inherent in the wording of a document. In *Foreca,* the phrase appeared in a document initialed by both parties to the "contract" and did not involve, as does this case, a resolution defining the respective powers of an agency's board and staff. If the resolution can be said to constitute an agreement between "parties," those parties would be the board and the general manager of the LCRA—not the LCRA as a whole and S & A Marinas.

**770**

*Turner v. Joshua Indep. Sch. Dist.,* 583 S.W.2d 939, 942 (Tex.App.—Waco 1979, no writ); *see also South Taylor County Indep. Sch. Dist. v. Winters Indep. Sch. Dist.,* 151 Tex. 330, 249 S.W.2d 1010, 1012 (1952).[8]

A board resolution does not, in and of itself, create vested contractual rights. *See Turner,* 583 S.W.2d at 942. Nor do those rights arise from the verbal communication of a board's decision to the party affected. *Id.* Therefore, assurances by various employees of the LCRA to the effect that the lease agreement between S & A Marinas and the LCRA was virtually completed have no bearing on the issue of whether the resolution gave rise to a contract. Given the LCRA's authority to reconsider its actions on a non-final matter, we conclude that rescission of its initial action was within its discretion in this instance insofar as the resolution cannot be construed as a final action.[9] We overrule S & A Marinas' first two points of error and consequently do not address the remaining eight.

### CONCLUSION

As a matter of law, the LCRA had a right to decide not to carry out any proposed action with respect to a lease of land to S & A Marinas up until the time such a lease was signed. The LCRA board retained its discretion in the matter by passing a resolution delegating its authority but not rendering a final decision on the merits of S & A Marinas' application. Therefore, as a matter of law, there was no contract with which Leonard Marine could tortiously interfere. Summary judgment in this instance was appropriate and we affirm the judgment of the trial court.

---

8. Most of the caselaw dealing with the issue of reconsideration of actions taken by governmental entities involves decisions made by school districts or administrative agencies. The LCRA is a conservation and reclamation district created by the state under the authority of Tex. Const. art. XVI, § 59(a). However, the LCRA is an agency in the broader sense of the term, and there is nothing to suggest that it has any less discretion than an agency created by other means. *See Chemical Bank & Trust,* 185 S.W.2d at 466–67;

*see also Lower Colorado River Auth. v. McGraw,* 125 Tex. 268, 83 S.W.2d 629, 636 (1935) (holding that the LCRA board is a state board contemplated by Tex. Const. art. XVI, § 30).

9. We do not decide the issue of whether a board resolution could ever vest a party with contractual rights. Rather, we determine that the resolution at issue in this case did not do so.