Issued September 25, 2008









Issued September 25, 2008

 

                                                                        



                                                

 

 

 

 

In The

Court
of Appeals

For The

First
District of Texas

 




 
 
 
 
 
 
 


 



NO.   01-07-00497-CV

 




 
 
 
 
 
 
 


 



FARRAGUT FINANCIAL CORPORATION,
Appellant/Cross-Appellee

 

V.

 

CAPITAL ONE AUTO FINANCE, INC.,
Appellee/Cross-Appellant

 

 

 



On Appeal from the County Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 875198

 

 

 



MEMORANDUM  OPINION

 

This case involves a dispute between
two lenders, concerning whether the lender who first provided the borrower with
motor vehicle financing, Capital One Auto Finance (Capital One), later agreed
to forward the borrower’s car title directly to another lender, Farragut
Financial Corporation (Farragut), who refinanced the loan.  The trial court
ruled that the lenders never formed such an agreement about forwarding title,
and accordingly, it entered judgment granting Capital One’s motion for summary
judgment and denying Farragut’s cross-motion for summary judgment.  Farragut
appeals that ruling.  Capital One conditionally cross-appeals, complaining of
Farragut’s failure to name the borrower as a party.  We conclude that Farragut
has failed to raise a fact issue as to the existence of an agreement and
therefore affirm.

Background

          Capital One agreed to loan
Wayne S. Daniel money for the purchase of a 2003 Ford Expedition.  In
connection with that loan, Daniel granted Capital One a first position lien and
a security interest in the Expedition.  

In 2005, Daniel refinanced the
vehicle loan through Farragut.  In connection with that refinancing, in
November 2005, Capital One received two checks issued by Farragut and made out
to Capital One, one for $24,571 and the other for $1,740.00.  These checks
referenced Daniel’s account number, and satisfied most, but not all, of the
balance remaining on Capital One’s loan to Daniel.  

          The indorsement side of
each check was imprinted with a stamp containing the following language:

The
payee(s) by endorsement of this check acknowledge(s) payment or partial payment
of indebtedness secured by collateral described below and hereby agree, upon
receipt of payment thereof in full, to terminate, release, and deliver to the
undersigned, the motor vehicle certificate of title on ______________________. 


A letter to Capital One accompanying
each check, prepared on Farragut letterhead and entitled “Authorization for
Payment,” stated that it was from Farragut and identified Daniel, his account
number, and the vehicle description.  The letter further declared 

I (we) hereby
authorize you to accept the attached check from [Farragut] as payment on the
above referenced account number.  I also authorize the release of information
about the above account to [Farragut].

PAYMENT
INSTRUCTIONS:  Please apply this payment toward the next three (3) scheduled
payments and the remaining balance to the principal.

. . . [Y]ou
can expect additional funds from canceled products to be sent to you from the
selling dealer. . . .

[X]    Ins./Warranty
rebate is forthcoming.

When this
account is paid in full, please release the title securing this loan and return
it to [Farragut] . . . .

I
understand that if Capital One Auto Finance mails the vehicle’s title to me in
error, it is my responsibility to promptly forward my title to [Farragut] . . .
.

Thank you
for your assistance.

          ________________________ 

          Wayne S Daniel

 

Capital One indorsed and deposited
these checks on receipt.

          In mid-December 2005,
Capital One received a check written to Daniel’s account from Lou Sobh Ford in
the amount of $299.  The check satisfied the outstanding balance on Daniel’s
account.  Capital One released its lien on the vehicle and sent the certificate
of title to Daniel.  Evidently, Daniel did not forward the certificate of title
to Farragut. 

Without the vehicle title, Farragut
could not perfect any security interest.  Farragut presented a claim for
payment to Capital One, demanding return of the amount Farragut paid into
Daniel’s account.  When Capital One refused to pay the demand, Farragut sued
Capital One for breach of contract, asserting that Capital One failed to comply
with a contractual obligation to send the vehicle title directly to Farragut
instead of to Daniel.  The parties filed cross-motions for summary judgment,
and the trial court granted Capital One’s motion.  After the trial court denied
Farragut’s motion for new trial, Farragut timely appealed.

Discussion

Standard of Review

We review the trial court’s grant of
summary judgment de novo.  Provident Life & Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Under the standard for summary judgment applicable
here, the movant has the burden to show that no genuine issue of material fact
exists and that judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  We view all evidence in a light favorable to the nonmovant and indulge every
reasonable inference in its favor.  Provident Life, 128 S.W.3d at 215.  When
both sides move for summary judgment and the trial court grants one motion and
denies the other, we consider both motions, their evidence, and their issues,
and we may render the judgment that the trial court should have rendered.  See
CU Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998).

Contract Formation

          In its original petition
and again on appeal, Farragut asserts that Capital One agreed to enter into a
binding agreement with Farragut when it indorsed and cashed the checks issued
in partial payment of Daniel’s account.  Specifically, Farragut contends, the
checks constituted an offer to pay Daniel’s indebtedness to Capital One in
exchange for Capital One’s agreement to release the vehicle title and forward
it directly to Farragut.  In asking for summary judgment, Capital One urged
that the checks lacked information vital to contract formation, and
accordingly, in the absence of any other communication between Farragut and
Capital One on the subject, cannot give rise to an enforceable agreement as a
matter of law.  

          Parties create a binding
agreement when the following elements are present: (1) an offer, (2) an
acceptance in strict compliance with the terms of the officer, (3) a meeting of
the minds, (4) each party’s consent to the terms, and (5) execution and
delivery of the contract with the intent that it be mutual and binding.  See
Winchek v. Am. Exp. Travel Related Servs. Co., Inc., 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Prime Prods., Inc. v. S.S.I. Plastics,
Inc., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied).  “[T]o be legally binding, a contract must be sufficiently definite in
its terms so that a court can understand what the promisor undertook.”  T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).  

To determine whether a contract is
enforceable as written, we construe it as a matter of law and focus on
ascertaining the intent of the parties as expressed in the instrument.  Chapman
v. Abbot, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no
pet.); see also Gilbert v. Pettiette, 838 S.W.2d 890, 893 (Tex. App.—Houston
[1st Dist.] 1992, no writ) (observing that whether offer and acceptance have
occurred is usually question of law).  The movant is entitled to summary
judgment if it conclusively establishes that no contract exists.  S & A
Marinas, Inc. v. Leonard Marine Corp., 875 S.W.2d 766, 768 (Tex. App.—Austin 1994, writ denied).  

          As authority for its
assertion that Capital One’s indorsement of the checks formed a contract,
Farragut cites City of Houston v. First City, 827 S.W.2d 462 (Tex.
App.—Houston [1st Dist] 1992, writ denied).  In that case, the taxpayer sent
checks in payment of delinquent property taxes and specified on the check stubs
and a letter accompanying them instructing the City to apply the payments only
to tax, interest and certain penalties and withhold payments under categories
that were in dispute.[1]  
 Id. at 468, 472.  We held that the City tacitly agreed to the
conditions stated on the checks, along with the accompanying transmittal
letters, when it accepted the payments, thereby creating an implied contract.  Id. at 473.  

          We find City of Houston inapposite.  In City of Houston, we noted that the checks were
tendered in the context of an existing dispute between the City and First City concerning First City’s tax obligations, and that the check stubs and transmittal
letters contained clear conditions addressing the application of the payments
to certain categories and not others.  Id. at 472.  Here, Farragut did
not send the checks in the context of a transaction between Farragut and
Capital One, but rather, solely for the benefit of its borrower, Daniel, to
satisfy Daniel’s obligations arising out of Daniel’s loan agreement with
Capital One.  We also observe that the indorsement language fails to recite any
independent consideration from Farragut to Capital One which could support the
imposition of any obligation on Capital One.  Nor does it impose any clear
condition on Capital One; rather, it states that, on full payment of Daniel’s
loan, Capital One is to forward to a nonexistent and unidentified “undersigned”
a motor vehicle title.[2] 
Further, the undisputed facts also show that Farragut’s checks did not
constitute full payment on Daniel’s balance due; thus, they did not satisfy the
condition precedent to any duty that Farragut sought to impose.  We hold that
the stamped language on Farragut’s checks is too incomplete and indefinite to
enforce an obligation that Farragut supposedly intended Capital One to
undertake.[3] 
See T.O. Stanley Boot Co., 847 S.W.2d at 221.

Sometimes, a single document that
does not form a contract can be definite enough to enforce when read with
related documents.  “When two instruments involve the same parties and relate
to the same transaction, we read the documents together in order to ascertain
the parties’ intent.”  Bowers v. Taylor, No. 01-05-00667-CV, 2007 WL
1299440, at *4  (Tex. App.—Houston [1st Dist.] May 3, 2007, no pet.)  (citing Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000)).  Farragut contends that the indorsement language on the checks should be read
in tandem with the authorization for payment letters accompanying the checks to
form a contract.  We disagree.  Courts consider multiple documents together in
ascertaining the parties’ intent only if those documents involve the same
parties and transaction.  See Bowers, 2007 WL 1299440 at *4.  The
letters accompanying Farragut’s checks contain instructions from Daniel that
authorize Capital One to accept the checks as payment in connection with the
loan agreement, referenced by its account number, between Capital One and
Daniel.  Farragut contends that we should construe the letters as involving the
same parties, pointing out that the letters were prepared on Farragut
letterhead and state that they are “From: Farragut Financial Corporation.”  The
fact that the letters were prepared on Farragut’s printed letterhead, however,
does not compel us to view Farragut as their author.  If the typewritten
provisions of a contract conflict with its printed provisions, the court
interpreting it must give the typewritten provisions effect over the printed
provisions.  McCreary v. Bay Area Bank & Trust, 68 S.W.3d 727, 732
(Tex. App.—Houston [14th Dist.] 2001, pet. dism’d).  The typewritten language
in the letters refers to the author as “I” and closes with a line for Daniel’s
signature.  The bulk of the typewritten provisions indicate that Daniel is the
intended author of the letters.  Daniel possessed the authority to authorize
and instruct Capital One concerning his loan payment and any release of
information about his agreement with Capital One.  That additional reason
reasonably dictates that Daniel is the author of the letters.  

Furthermore, the letters do not
involve the same transaction as the agreement alleged by Farragut.  Farragut’s
allegation that Capital One failed to comply with a duty to forward the motor
vehicle title directly to Farragut contemplates a different transaction, one
that involves different parties and obligations than the loan agreement between
Daniel and Capital One or between Daniel and Farragut.  Consequently, the
authorization for payment letters do not supply any missing terms for an
agreement between Farragut and Capital One.  

Because the language on the checks
omits terms material to contract formation and fails to state any definite
obligation, Farragut and Capital One could not have reached a meeting of the
minds as a matter of law.   Accordingly, because the evidence conclusively
negates the existence of any contract between Farragut and Capital One
involving delivery of the motor vehicle title at issue, we hold that the trial
court properly granted summary judgment in favor of Capital One.




Conclusion

The trial court properly granted
summary judgment dismissing Farragut’s contract claims against Capital One.  We
therefore affirm the judgment of the trial court.  All pending motions are
dismissed as moot.

 

Jane Bland

                                                          Justice

 

Panel consists of Justices Taft, Jennings and Bland.

 

 

 

 









[1]
City of Houston v. First City, 837 S.W.2d 462 (Tex. App.—Houston [1st Dist.]
1992, writ denied), was decided under provisions of the Texas Property Tax Code
that have been superseded.  See Reinmiller v. County of Dallas,
212 S.W.3d 835 (Tex. App.—Eastland 2006, pet. denied) (citing Tex. Tax Code Ann. § 31.073 (Vernon 1993).  





[2]
We need not decide whether the presence of
Daniel’s account number on the front of the checks gives rise to a fact issue
that the language on the back of the checks refers to the same motor vehicle
title that Capital One held as security for Daniel’s loan because the lack of
information concerning the identity of the intended title recipient is fatal to
Farragut’s contract claim.  

 





[3]
Farragut also asserts that Fleetwood v.
Medical Center Bank, 786 S.W.3d 550 (Tex. App.—Austin 1990, writ denied),
supports the conclusion that its tender of payment to Capital One obligated
Capital One to forward the title to Farragut so that Farragut could perfect its
security interest.  786 S.W.2d at 553–54.  In Fleetwood, however, the
parties agreed that Fleetwood’s subrogation claim sounded in equity.  Id. at 554.  Farragut’s live pleading states only a claim for breach of contract,
and an equitable right to subrogation cannot exist where a contract governs the
parties’ relationship.  See Fortis Benefits v. Cantu, 234 S.W.3d 642,
650 (Tex. 2007) (holding that equitable subrogation right may arise only in
absence of express agreement).  Also, Farragut’s checks did not fully discharge
Daniel’s debt and thus could not have triggered application of the rule recited
in Fleetwood.  See 786 S.W.2d at 554.