**AFFIRM; and Opinion Filed April 15, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00993-CV

### RAUL GALVEZ, Appellant

### V.

### TORNADO BUS COMPANY, TORNADO BUS COMPANY D/B/A TORNADO MONEY TRANSFERS, AND JUAN VAZQUEZ, Appellees

### On Appeal from the 160th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-11-15700

## MEMORANDUM OPINION
Before Justices Francis, Lang, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Raul Galvez appeals the trial court's grant of summary judgment in favor of appellees Tornado Bus Company, Tornado Bus Company d/b/a Tornado Money Transfers, and Juan Vazquez (collectively, Tornado Parties). In three issues, Galvez argues that the trial court erred in granting the Tornado Parties' traditional and no-evidence motions for summary judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

## BACKGROUND

In July 2007, Tornado Bus Company hired Galvez as its comptroller at a salary of $1,000 per week. Subsequently, Juan Vazquez (Vazquez), an officer and owner of Tornado Bus, asked Galvez to serve as the compliance officer for Tornado Money Transfers—a company that Tornado Bus operates under the d/b/a Tornado Money Transfers. Galvez testified by affidavit that, when Galvez informed Vazquez that serving as Tornado Money's compliance officer would involve additional work, Vazquez proposed paying Galvez an additional $550 per week and an additional $5,000 annually for his work as compliance officer. Galvez alleges that, on August 8, 2008, Vazquez and Vincente Vazquez signed the following resolution:[1]

> Tornado Bus Company Board Resolution
> Tornado Money Transfer[s]
>
> Appointing an [sic] Compliance Officer
>
> Duly Passed on August 8th, 2008
>
> WHEREAS, pursuant to by [sic] USA Patriot Act Section 352- Anti-Money Laundering Programs & Bank Secrecy Act Regulations & Texas Finance Code & Texas Administrative Code, [sic] will be subject to audits by Internal Revenue Services & Texas Banking Department & Georgia Banking Department & FINCEN Authority, and
>
> WHEREAS, Tornado Bus Company has just completed its fourteen[th] year of operation and an early and independent review o[f] its books, records and financial procedures promotes prudent financial management practices, and
>
> WHEREAS, after receiving and reviewing information with regard to experienced professional [sic] capable of providing that early review, this Board has determined that the independent professional Raul Galvez is qualified and experienced to provide those services.
>
> RESOLVED, that Raul Galvez is hereby appointed Compliance Officer to Tornado Bus Company (DBA) Tornado Money Transfers and shall further provide a report on his performances to the Finance Committee of this Board.

---

[1] The Tornado Parties dispute whether the resolution is an authentic document.

RESOLVED, establishing a weekly salary in the amount of US$550.00, for Raul Galvez as Compliance Officer and pay an annual bonus of US$5,000.00, starting on December 31, 2008.

RESOLVED FURTHER, that the officers of Tornado Bus Company (DBA) Tornado Money Transfers are, and each acting alone is, hereby authorized and directed to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified; and

We, the undersigned hereby certify that Tornado Bus Company is comprised of two members, of whom two, constituting a quorum, were present at a meeting duly and regularly called, noticed, convened and held this Eight[h] day of August, 2008, and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of two members, and not opposed, and that said Resolution has been duly recorded in the Minute Book and is in full force and effect.

The resolution was allegedly signed by "Vicente Vazquez–President" and "Juan Vazquez–Vice[ ]President & Secretary[.]"[2]

In addition, on January 15, 2010, Tornado Bus—by unanimous written consent of its board of directors, which at that time constituted Vazquez as sole director—passed a resolution that stated: "RESOLVED, that Raul Galvez is designated as the Anti-Money Laundering compliance officer within Tornado Money Transfers[.]"[3]

Galvez testified by affidavit that, from August 8, 2008 until October 1, 2010, Galvez worked as comptroller of Tornado Bus and compliance officer of Tornado Money and, during this period, Tornado Money paid Galvez $4,000. For 2008, Galvez received a W-2 from Tornado Bus reflecting his compensation of $52,000 as well as a W-2 from Tornado Money reflecting his compensation of $2,500. Galvez also testified by affidavit that he repeatedly requested payment for his services as the compliance officer for Tornado Money, and that Vazquez repeatedly promised that he would pay Galvez.

---

[2] Vazquez and Vicente Vazquez signed the resolution as officers, although the heading indicated that the document was a "Board Resolution[.]"

[3] This language in the resolution was in bold.

On July 24, 2010, Vazquez purported wrote a letter to "Raul Galvez Controller" stating:[4]

> Now that the company's economic situation has improved somewhat, I will find a way to say thank[s] to you for your patience, and repay all salaries and bonus arrangement we made couple years ago, through Tornado Money Transfer [sic], and company has failed to pay since.
>
> Thanks Raul for all the good work you have done.
>
> Your friend,
> /s/Juan Vazquez
> Juan Vazquez

In October 2010, Vazquez terminated Galvez's employment with Tornado Bus. Galvez claims that he was only paid $4,000 of the $71,600 that he was owed as compensation for his work as Tornado Money's compliance officer. Galvez contends that, as a result, the Tornado Parties owe him $67,100 plus interest in unpaid compensation for his services as Tornado Money's compliance officer.

Galvez sued Tornado Bus, and added Tornado Bus d/b/a Tornado Money and Vazquez by amended petition. In the seventh and final amended petition, Galvez asserted claims against the Tornado Parties for breach of contract, quantum meruit, promissory estoppel, unjust enrichment, fraud, common law wage, account stated, and conspiracy to commit fraud.[5] Tornado Bus and Vazquez[6] moved for traditional summary judgment on Galvez's breach of contract, common law wage, and quantum meruit claims and moved for no-evidence summary judgment on Galvez's fraud, promissory estoppel, unjust enrichment, common law wage, account stated, and conspiracy claims. The trial court granted the motion for summary judgment

---

[4] Vazquez denied signing this document.

[5] In his seventh amended petition, Galvez dropped his *Sabine Pilot* wrongful termination claim. The Tornado Parties sought and, after Galvez filed his seventh amended petition, the trial court granted traditional summary judgment on the wrongful termination claim.

[6] Although Galvez added Tornado Bus d/b/a Tornado Money Transfers by amended petition prior to the filing of the motion for summary judgment, Tornado Bus and Vazquez moved for summary judgment. As the Tornado Parties argue in their brief, "[a]s a d/b/a of Tornado Bus, Tornado Money has no legal existence independent from Tornado Bus." We agree. *See Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438 (Tex. App.—Dallas 2010, no pet.) ("A DBA is no more than an assumed or trade name. And it is well-settled that a trade name has no legal existence."). As a result, we refer to the parties who filed the motion for summary judgment as the Tornado Parties.

and dismissed Galvez's claims. Galvez appeals, arguing, in issue one, that the trial court erred by granting traditional summary judgment on his breach of contract and quantum meruit claims and, in issues two and three, that the trial court erred by granting no-evidence summary judgment on his fraud, unjust enrichment, and promissory estoppel claims.[7]

## STANDARD OF REVIEW

We review a motion for summary judgment de novo. *Travelers Ins. Co v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

A party moving for traditional summary judgment must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 864 (Tex. App.—Dallas 2009, pet. denied). We review the evidence presented in the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

We review no-evidence summary judgments under the same legal sufficiency standard as directed verdicts. *Merriman*, 407 S.W.3d at 248. Under that standard, evidence is considered in the light most favorable to the nonmovant, crediting evidence that a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* The nonmovant has the burden to produce summary judgment evidence raising a genuine issue of

---

[7] In his brief, Galvez does not challenge the grant of summary judgment on his *Sabine Pilot* wrongful termination, common law wage, account stated, or conspiracy claims.

material fact as to each challenged element of its cause of action. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment is proper when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merriman*, 407 S.W.3d at 248.

### BREACH OF CONTRACT

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach. *Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 131 (Tex. App.—Dallas 2014, no pet.).

In his first issue, Galvez argues that fact questions precluded summary judgment regarding whether Galvez was paid all amounts owed to him under his contract with the Tornado Parties and whether there was a meeting of the minds to establish an enforceable contract. He also argues that the Tornado Parties did not seek summary judgment on the ground that there was no contract and, even if they did, there were fact issues regarding the existence of a contract. The Tornado Parties argue that the trial court properly granted summary judgment on Galvez's breach of contract claim because there was no written agreement between Galvez and Tornado Bus and Galvez's testimony established that there was no meeting of the minds on the material terms of an alleged contract. Because our conclusion that there was not an enforceable contract is determinative, we address that argument first.

**Analysis**

**Galvez's Claim that Lack of an Enforceable Contract Was Not Raised in the Summary Judgment Motion**

Galvez contends that, because the Tornado Parties did not argue in their summary judgment motion that there was no enforceable contract, the Tornado Parties may not argue this on appeal. The Tornado Parties argue that they did argue this in their summary judgment motion stating: "Tornado Bus Company disputes that [sic] enforceability of the Resolution as a written contract."

The Tornado Parties cite *Stringer v. Grayson Bus Computers, Inc.*, No. 05-04-00822-CV, 2005 WL 906136, at *2 (Tex. App.—Dallas Apr. 20, 2005, no pet.) (mem. op.), and *Gehan Homes, Ltd. v. Employers Mutual Casualty Co.*, 146 S.W.3d 833, 845 (Tex. App.—Dallas 2004, pet. denied), in which this Court stated: "A movant is not required to specifically describe how evidence in support of the motion justifies a summary judgment; merely identifying a theory of liability or defense will suffice."[8] Galvez argues that *Garcia v. South Texas Security & Alarm Co.*, which is cited in *Gehan* to support the proposition the Tornado Parties argue, is different from this case and supports his position. 911 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1995, no writ).[9] And Galvez quotes from *McConnell v. Southside Independent School District* for the proposition that "a motion for summary judgment must itself expressly present the

---

[8] In *Stringer*—an age discrimination suit—this Court ruled that the following sentence "articulated a clear theory of defense": "Under the traditional summary judgment motion . . . Plaintiff must produce evidence that would at least create an issue of triable fact that GBC's stated reason [for terminating Stringer] is pretextual, and that GBC actually fired Plaintiff due to his age." 2005 WL 906136, at *2.

In *Gehan*, the insurance company appellees did present the grounds but did not present arguments or authorities concerning two insurance exclusions in their motions for summary judgment to establish that the policy exclusions applied to the insured's claims, which would preclude their duty to defend. 146 S.W.3d at 845. The insured argued that, because of the insurers' lack of argument and authorities concerning these two exclusions at trial and on appeal, we should not consider the two exclusions on appeal. *Id.* This Court concluded, citing other authority, that a movant "merely" needs to identify a theory of liability or defense and is not required to specifically describe how the evidence supporting the motion justifies summary judgment. *Id.*

[9] In *Garcia*, the court concluded that the following sentence met the requirements of rule 166a(c) for a motion for summary judgment to state the specific grounds therefor: "Plaintiffs have shown no legal duty that these Defendants owed to Plaintiffs and there is no causal connection between the Defendants' conduct and the damages suffered by the Plaintiffs." 911 S.W.2d at 485. Galvez argues that in this case, in contrast, "nowhere in its Motions for Summary Judgment did Tornado argue it was entitled to summary judgment on the grounds that there was no written contract between the parties."

grounds upon which it is made" and a "motion must stand or fall on the grounds expressly presented in the motion." 858 S.W.2d 337, 341 (Tex. 1993).

In the "Summary of Argument" of their motion for summary judgment, the Tornado Parties stated, "Tornado Bus Company asserts that the Resolution is not an enforceable agreement[.]" The motion also stated:

> Tornado Bus Company disputes that [sic] enforceability of the Resolution as a written contract. [Footnote omitted.] *See[,] e.g.[,] Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.) (affirming summary judgment on breach of contract claim because declaration did not purport to create a contract between the parties).

Consequently, we conclude that the Tornado Parties' motion for summary judgment identified their defense that there was no enforceable contract. *See Stringer*, 2005 WL 906136, at *2; *Gehan*, 146 S.W.3d at 845; *see also Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 442 (Tex. App.—Eastland 1995, writ denied) (concluding motion for summary judgment stating a party "moves for summary judgment against [the other party] on the affirmative defense of unenforceability pursuant to the Rule Against Perpetuities" "sufficiently set forth the ground upon which summary judgment was sought").

**Galvez's Claim that He Raised Fact Issues Regarding Whether There Was a Contract**

Galvez also argues that fact issues concerning "the existence of a valid written contract between Tornado and Galvez" precluded summary judgment. Galvez contends that the August 2008 board resolution, the January 2010 board resolution, and Vazquez's July 2010 letter to Galvez "clearly state Tornado would pay Galvez additional compensation to serve as Tornado Money's Compliance Officer." Galvez argues that he was not required to have a written memorandum to create "a written contract, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him[,]" that the document need not be called a "contract[,]" and that the "writing may consist" of "a combination of documents" and

"does not need to contain all of the stipulations on which the parties have agreed." Galvez quotes and relies upon *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ). But in *Joiner*, the court's statements were made in the context of deciding whether an agreement for the sale of land met the requirements of the statute of frauds—an issue not before us here. *Id.*

In addition, Galvez quotes from *Anderton v. Schiller*, in which this Court stated:

An agreement is enforceable if it is complete within itself in every material detail, and . . . contains all of the essential elements of the agreement. The intent of the parties to be bound is an essential element of an enforceable contract, and is generally a question of fact. However, where that intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law.

A contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract.

154 S.W.3d 928, 932 (Tex. App.—Dallas 2005, no pet.) (citations and internal quotation marks omitted). Unlike the present case, in *Anderton*, it was "uncontroverted that the parties signed a settlement agreement and intended to be bound by it." *Id.* at 933.

Galvez also argues that the Tornado Parties "fail[] to account" for numerous cases "recognizing both unilateral and bilateral contracts under similar circumstances." Galvez argues that the "most important" of these is *Vanegas v. American Energy Services*, 302 S.W.3d 299, 300–304 (Tex. 2009). In *Vanegas*, the supreme court concluded that an employer's alleged promise to pay five percent of the proceeds from the sale or merger of the company to employees who remained employed with the company at the time of the sale or merger was enforceable. *Id.* at 300, 303. The court stated that "continuing their employment with the company until it was sold constituted performance" by the employees under the unilateral contract represented by the promise and made the promise enforceable, even if the promise may have been illusory at the

time that it was made. *Id.* at 300. But *Vanegas* is distinguishable. As discussed below, the determinative issue here is whether Galvez raised a fact issue concerning the existence of an enforceable contract based on the evidence he presented—including the 2008 resolution, the 2010 resolution, and the letter from Vazquez to Galvez—not whether Galvez's claimed performance made any alleged promise to pay him for his services as compliance officer enforceable.

Instead, the Tornado Parties argue that there was no contract between any of the Tornado Parties and Galvez and, as a result, Galvez's breach of contract claim fails as a matter of law. The Tornado Parties contend that the "crux" of Galvez's breach of contract argument is that the August 2008 board resolution set out the terms of the contract and created a contract. They argue that, in order for the 2008 resolution to constitute legally sufficient evidence to support a breach of contract claim, Galvez must show that the resolution either created a contract between Galvez and Tornado Bus or that it vested Galvez with the right to sue to enforce the resolution. The Tornado Parties argue that the 2008 resolution did not create a contract between Galvez and Tornado Bus or any of the Tornado Parties because the 2008 resolution was not between Galvez and Tornado Bus, Galvez was not a signatory, the 2008 resolution did not refer to a contract between Galvez and Tornado Bus, and it did not convey to Galvez any right to enforce the resolution.

In addition, the Tornado Parties claim that the other two documents on which Galvez relies—the January 2010 board resolution and Vazquez's July 2010 letter to Galvez—likewise do not create a fact issue as to whether a contract existed. The Tornado Parties argue that the January 2010 board resolution designated Galvez as Tornado Money's compliance officer, which the Tornado Parties do not dispute, but did not indicate that Tornado Bus would pay Galvez additional compensation for his duties as compliance officer. The Tornado Parties also contend

–10–

that, although Vazquez's July 2010 letter to Galvez referred to "salaries and bonus arrangement[,]" it did not "provide any insight" concerning what the alleged arrangement was nor did it mention the August 2008 board resolution. The Tornado Parties argue that, as a result, the letter "sheds no light on the alleged contract[.]"

We conclude that Galvez did not raise a fact issue concerning the existence of an enforceable contract. "A board resolution does not, in and of itself, create vested contractual rights." *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 770 (Tex. App.—Austin 1994, writ denied). In *Turner v. Joshua Independent School District*, a school board passed a resolution extending the term of employment of a school principal for one year, voting "to hire Charlie Turner for one year[.]" 583 S.W.2d 939, 942 (Tex. Civ. App.—Waco 1979, no writ). The resolution did not direct the superintendent or any other person to communicate the offer to Turner or discuss possible contract terms with Turner. *Id.* A week later, the school board rescinded its action and resolved not to extend Turner's contract. *Id.* at 941–42. The court concluded that the "Board's action on March 6 [when it passed the resolution] could not result in a contract without an authorized communication of the action to appellant or some clear unequivocal action on appellant's part." *Id.* at 942. The court noted that the superintendent communicated to Turner that he had been rehired, but that appellant did not ask the superintendent "to notify the Board he accepted" and "appellant's casual conversation" with a board member "did not result in the making of a contract." *Id.* As a result, the court concluded that the trial court's findings and conclusion "that no contract existed are correct." *Id.*

In contrast, the court in *Wiberg v. Gulf Coast Land & Development Co.* considered whether board of directors resolutions that provided that Wiberg and another director, Chase, "be given a contract of employment, whether by a management-type contract or otherwise" created a contract. 360 S.W.2d 563, 566 (Tex. Civ. App.—Beaumont 1962, writ ref'd n.r.e.). Wiberg was

a member of the board and approved the resolutions. *Id.* at 562. At the board meeting, "it was decided" that Wiberg and Chase would undertake "a successful completion of the stock sales program" for the corporation. *Id.* at 564. The board passed the resolution providing that both Wiberg and Chase "be given a contract of employment" for one year, renewable for four additional years, "in consideration of their devoting their entire time" to the corporation. *Id.* The resolution stated that their compensation would be seven and a half percent to Wiberg and seven and a half percent to Chase of the total sales price of the company's stock sold during the previous two week period. *Id.* at 564–65. The board meeting minutes reflected discussion of their compensation arrangement. *Id.* at 565. The stockholders, including Wiberg and Chase, approved the minutes of the board meeting, which included the resolutions, the next day. *Id.* The court concluded that the "actual dealings and conduct of the parties" were "sufficient to make the contract enforceable." *Id.* at 567. The court noted that all of the company's directors, officers, and employees "acted upon and treated the stock sales program set forth in the resolutions as the contract for over two years." *Id.* The company obtained "[g]reat sums of money" and "commissions [were] paid every two weeks for stock sales of this period." *Id.* In addition, an application for registration of securities with the secretary of state that legal counsel for the company prepared set forth the commissions. *Id.* The court concluded that "[b]y common consent and actual dealings, all parties recognized the resolutions passed as the contract itself, and their practical construction should be upheld." *Id.*

The present case is distinguishable from *Wiberg* and more closely resembles *Turner*. Although the 2008 Tornado Bus board resolution appointed Galvez as compliance officer and stated, "establishing a weekly salary in the amount of US$550.00, for Raul Galvez as Compliance Officer and pay an annual bonus of US$5,000.00, starting on December 31, 2008[,]" there was no "common consent" or "actual dealings" as in *Wiberg* that demonstrated that "all

parties recognized the resolutions passed as [a] contract itself[.]" *Id.* In *Wiberg*, "commissions [were] paid every two weeks for stock sales"—although Wiberg complained that he had not received all commissions that he had earned. *Id.* at 565, 567. In this case, the record reflects that Galvez was not paid a weekly salary or an annual bonus as stated in the resolution. Galvez testified by affidavit that, during the period of August 8, 2008 to October 1, 2010, Tornado Money paid him $4,000 and a W-2 tax form in the record reflects that Tornado Money paid Galvez $2,500 in 2008.[10] But the record does not reflect what Galvez was paid $2,500 to do, nor does it show whether these payments are part of what is referred to in the 2008 resolution "starting on December 31, 2008." Instead, like *Turner*, Tornado Bus allegedly passed the 2008 resolution, but did not take "some clear unequivocal action" to implement the resolution. *Turner*, 583 S.W.2d at 942.

The reasoning of *S & A Marinas, Inc.* is also persuasive in this case. The dispositive issue in *S & A* was whether a resolution passed by the board of the Lower Colorado River Authority (LCRA) authorizing the staff of the LCRA to negotiate and execute a lease with S & A Marinas, Inc., a marina operator, "constituted a contract" between LCRA and S & A. 875 S.W.2d at 768. The court concluded that the resolution was not a contract as a matter of law because the resolution contemplated "further staff action before contractual relations [were] finalized." *Id.* The resolution "RESOLVED that the General [M]anager, or his designee, be and hereby is, authorized to negotiate and execute a fifteen (15) year lease of 9.735 acres, LCRA Tract TS-6, Travis County, to S & A Marinas, Inc. (dba Hurst Harbor Marina) for the continued use and expansion of a commercial marina as recommended in Agenda Item 17[.]" *Id.* at 768 n.4. The following paragraph of the resolution provided: "FURTHER RESOLVED that the

---

[10] The record also contains pay stubs for Galvez from Tornado Bus Company d/b/a Tornado Money Transfers for portions of November and December 2008 reflecting compensation of $2,000.

General Manager, officers, and staff be, and they hereby are, authorized and directed to do all things necessary and proper to carry out the terms and purposes of these resolutions." *Id.* The court concluded that the resolution was an "unambiguous grant of authority" to the staff to negotiate and execute a contract, but the staff was not ordered to do so. *Id.* at 769. The court noted that the verb "directed" was in the second paragraph, which was mandatory language requiring the staff to take action to carry out the resolution, and that this mandatory language was not in the first paragraph. The court concluded that the resolution "does not express the LCRA's intent to be bound and is not open to the interpretation that it creates a binding contract." *Id.*

Similarly, in this case, the 2008 board resolution stated, "RESOLVED, that Raul Galvez is hereby appointed Compliance Officer to Tornado Bus Company (DBA) Tornado Money Transfers and shall further provide a report on his performances to the Finance Committee of this Board" and "RESOLVED, establishing a weekly salary in the amount of US$550.00, for Raul Galvez as Compliance Officer and pay an annual bonus of US$5,000.00, starting on December 31, 2008." Then the following paragraph provided, "RESOLVED FURTHER, that the officers of Tornado Bus Company (DBA) Tornado Money Transfers are, and each acting alone is, hereby authorized and directed to take such further action as may be necessary, appropriate or advisable to implement this resolution and amendment and any such prior actions are hereby ratified[.]" The resolution states that it is "establishing" Galvez's compensation as compliance officer, and the next paragraph provides that the officers of Tornado Bus d/b/a Tornado Money are "authorized and directed" to take further action "to implement this resolution[.]" Like the resolution in *S & A*, the 2008 resolution in this case contemplated "further . . . action before contractual relations [were] finalized" and did not create a contract. *See id.* at 768.

Galvez also contends that the January 2010 Tornado Bus board resolution resolving "that Raul Galvez is designated as the Anti-Money Laundering compliance officer within Tornado

–14–

Money Transfers" and the July 24, 2010 letter by Vazquez to "Raul Galvez Controller" referring to "salaries and bonus arrangement we made couple years ago" together with the 2008 board resolution constitute an enforceable contract. Although the January 2010 resolution designated Galvez as Tornado Money's compliance officer, it did not mention compensation for his services as compliance officer—the point of contention here. And although Vazquez's letter mentioned "salaries and bonus arrangement[,]" the letter did not specify what the salary and bonus arrangement were. *See Anderton*, 154 S.W.3d at 932 (stating an enforceable agreement is "complete within itself in every material detail, and . . . contains all of the essential elements of the agreement" (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995))).

We conclude that Galvez did not raise a genuine issue of material fact regarding whether there was a contract between the Tornado Parties and Galvez to pay Galvez additional compensation to serve as Tornado Money's compliance officer. Because of this conclusion, we do not address Galvez's other arguments concerning his breach of contract claim. TEX. R. CIV. P. 47.1. We conclude that summary judgment was proper on Galvez's breach of contract claim. We overrule the portion of Galvez's first issue concerning his breach of contract claim.

## QUANTUM MERUIT

Galvez also argues in his first issue that traditional summary judgment on his quantum meruit claim was improper because he raised genuine issues of material fact on that claim. We disagree.

Quantum meruit is an equitable remedy that "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (quoting *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). The claim does not arise out of, and is independent of, a contract. *Vortt*, 787 S.W.2d at 944. A party may recover in quantum meruit when nonpayment

–15–

for the services the party rendered would "result in an unjust enrichment to the party benefited by the work." *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)). To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Id.*

Galvez argues that the Tornado Parties incorrectly contend that "Galvez was paid all amounts owed to him." Galvez contends that there was "ample evidence" for a jury to find "there was agreement" to pay Galvez "**over and above**" what Tornado Bus paid Galvez for serving as Tornado Bus's comptroller and that the Tornado Parties did not pay Galvez as promised. Galvez argues that he did not sue to claim that he was not paid for serving as Tornado Bus's comptroller, but rather he sued in quantum meruit because Tornado Bus "reneged" on its agreement to pay him for his service as Tornado Money's compliance officer.

The Tornado Parties argue that the trial court properly granted summary judgment on Galvez's quantum meruit claim because Galvez was paid a salary during the period in which he alleges that he was owed additional compensation and Galvez introduced no evidence that the salary was not reasonable compensation for the services that he rendered.[11] The Tornado Parties argue that, as a result, there was no genuine issue of material fact concerning whether the salary that Galvez received during his employment with Tornado Bus was reasonable value for the services he rendered as the compliance officer for Tornado Money. The Tornado Parties also

---

[11] The Tornado Parties allege that they made this argument below as grounds for summary judgment and that Galvez's contention that the Tornado Parties "argued only that Galvez was paid all amounts owed to him" is not correct. The record reflects that the Tornado Parties did state this argument in their motion for summary judgment.

–16–

argue that they were entitled to summary judgment because they paid Galvez more than the amount Galvez stated in response to interrogatories was the reasonable value of his services and he did not create a fact issue on the element of damages.

"A party must introduce evidence on the correct measure of damages to recover on quantum meruit, which is the reasonable value of work performed and the materials furnished." *LTS Grp., Inc. v. Woodcrest Capital, L.L.C.*, 222 S.W.3d 918, 920–21 (Tex. App.—Dallas 2007, no pet.). The Tornado Parties contend that *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549–50 (5th Cir. 2010), is directly on point. In *Sullivan*, a former chief executive officer of a corporation asserted a quantum meruit claim under Texas law against his former employer, arguing that he was not "fully compensated" for his services. *Id.* at 550. Sullivan acknowledged that he had received a salary, but claimed that he was entitled to additional compensation under the terms of an unsigned employment contract. The court stated, "Sullivan is essentially arguing that he was not 'fully compensated' since he did not receive the salary *and* the additional compensation set forth in the unsigned employment contract." But the court concluded that "quantum meruit cannot be used to enforce the terms of an unsigned draft of a contract, and Sullivan has alleged no facts showing that the salary was not the 'reasonable value' for the services he rendered." *Id.*

Galvez claims that the summary judgment evidence he produced "render[s] *Sullivan* irrelevant here." He argues that this includes summary judgment evidence establishing that (1) Vazquez asked Galvez to serve as Tornado Money's compliance officer, (2) Galvez told Vazquez that serving as compliance officer would require additional work on his part, and (3) Vazquez suggested additional compensation for Galvez to serve as compliance officer, and set the compensation at $550 per week and an annual bonus of $5,000.

But we agree with the Tornado Parties and the reasoning under analogous facts in *Sullivan* that Galvez cannot employ quantum meruit in this case to enforce resolutions that we

conclude did not create an enforceable contract and that Galvez "has alleged no facts showing that the salary" he received "was not the 'reasonable value' for the services he rendered." *See id.* In addition, evidence in the summary judgment record reflects that others received no compensation for serving as compliance officer of Tornado Money. We conclude that summary judgment was proper on Galvez's quantum meruit claim.[12] We overrule the portion of Galvez's first issue concerning his quantum meruit claim.

### FRAUD

Galvez argues in his second issue that the trial court erred in granting no-evidence summary judgment on Galvez's fraud claim because the summary judgment evidence established a genuine issue of material fact on each element of fraud. The elements of a fraud cause of action are: (1) a material misrepresentation was made, (2) the representation was false, (3) at the time the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party suffered injury as a result. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Because the trial court did not specify the basis for its grant of no-evidence summary judgment on Galvez's fraud claim, we must affirm the summary judgment if any of the grounds on which judgment were sought were meritorious. *Merriman*, 407 S.W.3d at 248.

Galvez argues that he raised issues of fact on his fraud claim, including that Vazquez asked Galvez to serve as Tornado Money's compliance officer, that Vazquez proposed to pay Galvez additional compensation to perform his duties as compliance officer, that—when Galvez asked Vazquez about his not receiving the allegedly agreed compensation—Vazquez stated he

---

[12] Given our resolution of this issue, it is not necessary for us to consider Galvez's other arguments concerning his quantum meruit claim.

would pay Galvez the agreed amounts, although he might need to "catch up" on payments in the future when Tornado Bus and Tornado Money were in a better financial position. But we agree with the Tornado Parties that Galvez has provided no evidence raising an issue of fact that, when Vazquez allegedly promised Galvez that he would pay him additional compensation for his work as Tornado Money's compliance officer, Vazquez knew the representation was false or made it recklessly without any knowledge of its truth. *See Italian Cowboy*, 341 S.W.3d at 337.

We conclude that the trial court did not err in granting no-evidence summary judgment on Galvez's fraud claim. We overrule the portion of Galvez's second issue concerning his fraud claim.

**UNJUST ENRICHMENT AND PROMISSORY ESTOPPEL**

In his second and third issues, Galvez argues that the trial court erred in granting no-evidence summary judgment on his unjust enrichment and promissory estoppel claims. Because the trial court did not specify its grounds for granting summary judgment, we must affirm the summary judgment if any of the grounds on which judgment were sought were meritorious. *Merriman*, 407 S.W.3d at 248.

*Unjust Enrichment*

Galvez argues that "numerous courts have recognized unjust enrichment as a separate cause of action" or a viable theory of recovery, and that the supreme court recognizes that a two-year statute of limitations applies to unjust enrichment claims. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007) (referring to suit "seeking restitution under an unjust enrichment theory"). "This Court has held that unjust enrichment is not an independent cause of action." *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.). The term unjust enrichment instead "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under

circumstances which give rise to an implied or quasi-contractual obligation to repay." *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). The unjust enrichment doctrine applies principles of restitution to disputes in which no contract exists and is based on the equitable principle that one who receives benefits that would be unjust to retain should make restitution of those benefits. *Richardson Hosp. Auth.*, 387 S.W.3d at 114. Because there is not an independent cause of action for unjust enrichment, the trial court did not err in granting no-evidence summary judgment on Galvez's unjust enrichment claim.

### *Promissory Estoppel*

The elements of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial detrimental reliance by the promisee. *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Galvez argues that promissory estoppel "is an alternative theory of recovery when there is no valid and enforceable contract" and that it has "been a recognized cause of action in Texas for decades." But Galvez cites authorities that do not concern at-will employment. *See, e.g., Wheeler v. White*, 398 S.W.2d 93, 94, 97 (Tex. 1965) (promissory estoppel valid claim for detrimental reliance damages in connection with promise to secure a commercial loan or provide money). The Tornado Parties argue that the trial court properly granted summary judgment on the promissory estoppel claim because Galvez, as an at-will employee, could not have detrimentally relied upon the Tornado Parties' promise of employment for a specific period or for a certain compensation because the Tornado Parties could terminate the employment relationship for any reason and at any time. We agree. "A promise to provide employment which is subject to termination at any time or for any reason does not provide any assurances about the employer's future conduct, and does not provide a basis for detrimental reliance as a matter of law." *Collins v. Allied Pharmacy Mgmt.,*

–20–

*Inc.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th] 1994, no writ).  Galvez contends that the Tornado Parties' argument concerning Galvez's at-will employment status is not relevant here, because Galvez's promissory estoppel claim does not concern benefits that he would have earned if his at-will employment was extended but rather concerns the promised payment for the work that Galvez had already performed.  The authority that Galvez relies upon—*Vanegas v. American Energy Services*—does not apply as *Vanegas* did not involve a promissory estoppel claim.  302 S.W.3d at 303 (determining whether an enforceable unilateral contract existed between an employer and employees).  We conclude that the trial court properly granted no-evidence summary judgment on Galvez's promissory estoppel claim.

We overrule the portions of Galvez's second issue and Galvez's third issue concerning his unjust enrichment and promissory estoppel claims.

CONCLUSION

We overrule Galvez's issues and affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130993F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RAUL GALVEZ, Appellant

No. 05-13-00993-CV     V.

TORNADO BUS COMPANY, TORNADO
BUS COMPANY D/B/A TORNADO
MONEY TRANSFERS, AND JUAN
VAZQUEZ, Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-15700.
Opinion delivered by Justice Lang-Miers,
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees TORNADO BUS COMPANY, TORNADO BUS
COMPANY D/B/A TORNADO MONEY TRANSFERS, AND JUAN VAZQUEZ recover their
costs of this appeal from appellant RAUL GALVEZ.

Judgment entered this 15th day of April, 2015.