**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00648-CV

———————————

**BARRETT WAKEFIELD AND HOWARD WAKEFIELD III, Appellants**

**V.**

**SAM AYERS AND CLAUDIA AYERS, Appellees**

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1007580-102**

---

## MEMORANDUM OPINION

Appellants, Howard Wakefield III ("Howard") and Barrett Wakefield ("Barrett"), challenge the trial court's rendition of summary judgment in favor of appellees, Sam Ayers and Claudia Ayers (collectively, the "Ayerses"), in their suit against Howard and Barrett for breach of fiduciary duty, fraud, money had and

received, conspiracy, and breach of contract. In six issues, Howard and Barrett contend that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim.

We affirm.

## Background

In their third amended petition, the Ayerses alleged that they were the "owners of record of 410,000 shares of stock" in ThinAir Wireless, Inc. ("ThinAir"). To the Ayerses' detriment, ThinAir, Howard, Barrett, and Randall Wayne Habel[1] "engaged in . . . systematic fraud and dereliction of their duties to . . . shareholders . . . by . . . falsifying financial statements, issuing wrongful disclosures[,] and persistent[ly] self-dealing." Howard, Barrett, and Habel also "repeatedly misrepresented or failed to disclose important facts" to ThinAir's shareholders, "failed to follow corporate formalities," "failed to make mandatory filings," "failed to provide shareholders with requested information regarding ThinAir's business, and, generally, treated ThinAir as their own endeavor without regard for the interests of [its] shareholders." More specifically, Howard, Barrett, and Habel "wrongfully took or otherwise exercised control over money from ThinAir's business accounts and used it for personal use . . . and otherwise directed

---

[1]     ThinAir and Habel are not parties to this appeal.

2

corporate funds to be used for their private purposes, all to the detriment of the shareholders and in breach of their fiduciary duties."

The Ayerses further alleged that "during 2010 and 2011, ThinAir expensed consulting fees to Wakefield Enterprises and . . . to Barrett . . . without disclosing [Barrett's] relationship with [such] . . . entities, or otherwise disclosing what services the[] [entities] provided." Records reveal payment of "tens of thousands of dollars . . . to . . . Habel and hundreds of thousands of dollars . . . to Howard . . . and Barrett . . . over the past few years." Howard and Habel, and through them, ThinAir, "induced [the Ayerses] to make substantial investments" in the business by making "intentional and negligent misrepresentations." And, "[i]n seeking additional investors to pour money into ThinAir," Howard, Barrett, and Habel "withheld relevant information from [the Ayerses] and intentionally misrepresented the nature and extent of [the] business opportunities available to ThinAir."

The Ayerses brought claims against ThinAir, Howard, Barrett, and Habel for breach of fiduciary duty, fraud, money had and received, conspiracy, and breach of contract. In regard to their breach-of-contract claim, the Ayerses alleged that "on or about January 4, 2013," they, ThinAir, Howard, Barrett, and Habel negotiated and executed "a Rule 11 Settlement Contract" (the "settlement agreement"). Under the terms of the settlement agreement, ThinAir, Howard, Barrett, and Habel, "within ten (10) business days of the date of the agreement," were to "pay [the Ayerses] the sum

3

of ONE HUNDRED FORTY THOUSAND DOLLARS ($140,000)" "in full settlement of [the Ayerses'] claims and to resolve all matters in dispute between" them. However, despite the terms of the settlement agreement, ThinAir, Howard, Barrett, and Habel made no payment to the Ayerses.

The Ayerses moved for summary judgment on their breach-of-contract claim, arguing that they were entitled to judgment as a matter of law because "there [was] an enforceable settlement agreement between [them] and [ThinAir, Howard, Barrett, and Habel], whereby all [of the Ayerses'] claims [would be] released and dismissed in return for payment [of] . . . $140,000," and ThinAir, Howard, Barrett, and Habel "did not pay the agreed settlement amount of $140,000 by the [required] date." Thus, "[t]here [was] no genuine issue of material fact as to the . . . breach of the enforceable settlement agreement."

The Ayerses also moved for summary judgment on Howard and Barrett's affirmative defense of mutual mistake, asserting that there is no evidence of mutuality, i.e., there is no evidence that the Ayerses were "operating under the same mistake of fact as [ThinAir, Howard, Barrett, and Habel,] when the settlement agreement was made."[2]

---

[2] The Ayerses also moved for summary judgment on Howard and Barrett's affirmative defense of repudiation, which the trial court granted. Neither Howard nor Barrett challenges this portion of the trial court's summary judgment.

4

In their response to the Ayerses' matter-of-law summary-judgment motion, Howard and Barrett argued that "a fact question [existed] as to whether the settlement agreement . . . subject[ed] all of the[] defendants" or only ThinAir to liability because "[w]hen [Howard and Barrett] agreed to settle the case, [they were] under the belief that ThinAir was agreeing to make the [$140,000] payment on behalf of all [of the] [d]efendants." Further, in response to the Ayerses' no-evidence summary-judgment motion on the affirmative defense of mutual mistake, Howard and Barrett asserted that "the settlement agreement was entered into under the [mistaken] belief that a loan was forthcoming to enable [ThinAir] to fund the [$140,000] settlement amount" and a fact issue existed as to whether the Ayerses had also "believed that the settlement funds would come from [the] additional financing."

The trial court granted the Ayerses summary judgment on their breach-of-contract claim, ordering ThinAir, Howard, Barrett, and Habel to pay the Ayerses $140,000 in actual damages, $15,500 in attorney's fees, and an additional $12,000 in attorney's fees, "[i]n the event [of] an unsuccessful appeal" of the summary judgment. The trial court subsequently severed the Ayerses' breach-of-contract claim against Howard and Barrett, thereby making its summary-judgment order final and appealable as to them.

## Standard of Review

We review a trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  In conducting our review, we take as true all evidence favorable to the non-movants, and we indulge every reasonable inference and resolve any doubts in the non-movants' favor.  *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins.*, 128 S.W.3d at 215.  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the judgment if any of the asserted grounds are meritorious.  *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Parties seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law.  *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(a), (c), (i).  To prevail on a no-evidence summary-judgment motion, the movants must assert that there is no evidence to support an essential element of the non-movants' claim or defense on which the non-movants would have the burden of proof at trial.  *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  The burden then shifts to the non-movants to present evidence raising a genuine issue of

material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. The trial court must grant the motion if the non-movants fail to produce summary-judgment evidence raising a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i); *Hahn*, 321 S.W.3d at 524.

In a matter-of-law summary-judgment motion, the movants have the burden to show that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When plaintiffs move for summary judgment on their own claim, they must conclusively prove all essential elements of their cause of action. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). If the plaintiffs meet their burden, then the burden shifts to the non-movants to raise a genuine issue of material fact precluding summary judgment. *See Steel*, 997 S.W.2d at 222–23; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

**Formation of a Contract**

In his second issue, Barrett argues that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim against him because they "fail[ed] to conclusively prove formation of a contract with [him]."

Settlement agreements may be enforced as contracts. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996). To be entitled to summary judgment on their breach-of-contract claim, the Ayerses were required to show, as a matter of law: (1) the existence of a valid contract between themselves and Barrett; (2) their performance or tendered performance; (3) breach of the contract by Barrett; and (4) damages sustained by them as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In their summary-judgment motion, the Ayerses asserted that they and Barrett entered into a settlement agreement in which Barrett agreed to pay them $140,000 in exchange for their settling the entirety of their claims against him. The Ayerses' attorney and Barrett's attorney signed the settlement agreement on behalf of their clients, respectively. The Ayerses, however, never received payment from Barrett, as required by the settlement agreement. Thus, they asserted that "[t]here [was] no genuine issue of material fact as to [Barrett's] breach of the enforceable settlement agreement" and they were "entitled to judgment on their breach of contract claim [against Barrett,] as a matter of law."

To their summary-judgment motion, the Ayerses attached a copy of the settlement agreement, which was signed by their attorney and Barrett's attorney. The settlement agreement states:

. . . [The Ayerses] accept the $140,000 settlement offer.

. . . [The Ayerses] have agreed to settle, release and dismiss all claims they have brought against [ThinAir, Howard, Barrett, and Habel] in return for [their] agreement to pay [the Ayerses] $140,000, in certified or wired funds, within 10 business days . . . .

. . . [P]lease let this serve as a Rule 11 Agreement regarding the dismissal of [the Ayerses'] claims and the agreed payment of $140,000.

The Ayerses also attached to their summary-judgment motion, the affidavit of Sam Ayers. In pertinent part, he testified as follows:

. . . I authorized the settlement agreement which is attached to [the] Motion for Summary Judgment. The copy of the settlement agreement attached to the Motion for Summary Judgment is a true and correct copy of the settlement agreement which I authorized my attorney to enter into in order to resolve all claims between myself and my wife, Claudia Ayers[,] against Defendants ThinAir Wireless, Inc., Howard J. Wakefield, III, Barrett Wakefield and Randall Wayne Habel. As of the date of this Affidavit, no payment whatsoever has been made.

At the time I agreed to the settlement, I had no understanding or anticipation of the source of the settlement funds and the source of the settlement funds was not a factor or condition of the settlement. The agreement is that all claims are dropped in exchange for payment by Defendants of $140,000. The terms of the settlement were clear to me and I was under no misunderstanding or mistake about any of the settlement terms. The settlement agreement does not mention the source of the settlement funds to be used by Defendants and the settlement is not conditioned on any particular source of the settlement funds.

Barrett first argues that the Ayerses did not prove the formation of a contract with him because they presented no evidence of a settlement agreement containing his personal signature.

9

It is a well-established principal of contract law that a person must be a party to an agreement in order to be bound by that agreement. *Suarez v. Jordan*, 35 S.W.3d 268, 274 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Here, it is undisputed that the settlement agreement was signed by the attorneys for the Ayerses and Barrett, but it does not contain Barrett's personal signature. However, an attorney may execute an enforceable settlement agreement on his client's behalf; and, under such circumstances, a client's personal signature is not required. *See Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *In re R.B.*, 225 S.W.3d 798, 803 (Tex. App.—Fort Worth 2007, no pet.). This is because "[t]he attorney-client relationship is an agency relationship" and an attorney's "acts and omissions within the scope of his or her employment are regarded as the client's acts." *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986); *see also Green*, 342 S.W.3d at 691.

We conclude that the mere fact that Barrett himself did not sign the settlement agreement does not, on its own, render the agreement unenforceable. *See Green*, 342 S.W.3d at 691; *In re R.B.*, 225 S.W.3d at 803; *see also Behzadpour v. Bonton*, No. 14-09-01014-CV, 2011 WL 304079, at *3 n.2 (Tex. App.—Houston [14th Dist.] Jan. 27, 2011, no pet.) (mem. op.) ("An attorney retained for litigation is presumed to possess actual authority to enter into a settlement agreement on behalf of [his] client.").

Barrett next argues that the Ayerses did not prove the formation of a contract with him because they relied solely on an agreement signed by his attorney, who, according to Barrett, lacked authority to "make [an] agreement with the Ayers[es] on behalf of [him] personally." He asserts that he "did not expressly authorize his attorney to commit him to personal liability for the settlement amount specified in the [settlement] agreement." And, at the very least, there are "genuine questions of material fact" as to whether his attorney had the authority to "bind" him to the settlement agreement.

When a party denies a person's authority to execute an "instrument in writing, upon which a[] pleading is founded," a verified affidavit is required. TEX. R. CIV. P. 93(7); *see also Gooday v. Gooday*, No. 14-94-00367-CV, 1996 WL 283066, at \*2 (Tex. App.—Houston [14th Dist.] May 30, 1996, writ denied) (not designated for publication); *Fail v. Lee*, 535 S.W.2d 203, 205–07 (Tex. Civ. App.—Fort Worth 1976, no writ). Specifically,

> [a] pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.
>
> . . . .
>
> 7. Denial of the execution by [a party] or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. . . . In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved.

TEX. R. CIV. P. 93(7).

At the time of the summary-judgment hearing, Barrett's live pleading—his October 14, 2013 answer—consisted solely of an *unsworn* general denial and an assertion of three affirmative defenses. Notably, when, as here, a defendant does not file, prior to a summary-judgment hearing, a pleading denying under oath that his attorney had the authority to execute a settlement agreement on which the plaintiff's cause of action is based, then an attorney's authority to act on behalf of his client is admitted.[3] *See id.*; *Fail*, 535 S.W.2d at 205–07 ("Because the defendant failed to file a pleading prior to the summary judgment hearing denying under oath that his attorney of record . . . was authorized by him to execute the written offer of settlement on which plaintiffs' action is in part founded, the authority of the attorney to act for the defendant . . . in making such written settlement offer was admitted."); *see also Gooday*, 1996 WL 283066, at *1–2 (affirming summary judgment where defendant argued attorney had no authority to settle case but "failed to file an affidavit stating her attorney had no authority to execute the [settlement] offer"); *Baylor Univ. Med. Ctr. v. Van Zandt*, 620 S.W.2d 707, 709 (Tex. App.—Dallas 1981, no writ) (defendant *admitted* contract signed by him, or with his authority, where he failed to deny execution of contract or allegation he or authorized agent signed it); *Pub. Serv. Life Ins. Co. v. Copus*, 494 S.W.2d 200, 202–03 (Tex. Civ.

---

[3]  Barrett does not dispute that William B. Underwood was his attorney at the time the parties executed the settlement agreement.

12

App.—Tyler 1973, no writ) ("[S]ince appellant failed to deny under oath the execution of the written instrument ordering the material, the authority of Millard Collins to act for the company will be deemed to have been *admitted*." (emphasis added)).

Simply put, in the circumstances presented here, there can be "*no fact issue involved at [a] summary judgment hearing [regarding] whether or not [a defendant's] attorney of record had authority* from him" to execute a settlement agreement on his behalf.[4] *Fail*, 535 S.W.2d at 206 (emphasis added); *see also Gooday*, 1996 WL 283066, at *1–2.

Regardless, in support his assertion that he raised a genuine issue of material fact about his attorney's authority to bind him to the settlement agreement, Barrett directs us to his third-amended answer, which contains his verified denial to the allegation of the Ayerses that the settlement agreement was "executed by [Barrett], []or by an agent with authority to bind him to the terms that [the Ayerses] ascribe to the instrument giving rise to [their] breach of contract claim." *See* Tex. R. Civ. P. 93(7). Notably, Barrett did not file his third-amended answer until nearly eight

---

[4] Having concluded that Barrett admitted that his attorney had authority to act on his behalf, we need not address Barrett's argument that "genuine questions of material fact exist as to whether [his] attorney had implied or apparent authority to bind him to" the settlement agreement. *See* Tex. R. App. P. 47.1.

13

months after the trial court had granted the Ayerses summary judgment on their breach-of-contract claim.

A trial court considers the pleadings and summary-judgment evidence on file at the time of the summary-judgment hearing, or filed thereafter, but before judgment, with the permission of the trial court. TEX. R. CIV. P. 166a(c); *see Leinen v. Buffington's Bayou City Serv. Co.*, 824 S.W.2d 682, 684–85 (Tex. App.—Houston [14th Dist.] 1992, no writ). However, an amended pleading filed after a trial court enters summary judgment is simply "too late" and may not be considered by the trial court. *Joaquin Indep. Sch. Dist. v. Shelby Cty. App. Dist.*, No. 12-13-00038-CV, 2014 WL 5511479, at *7 (Tex. App.—Tyler Aug. 29, 2014, pet. denied); *see also Automaker, Inc. v. C.C.R.T. Co.*, 976 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1998, no writ). And, we cannot, on appeal, consider amended pleadings filed after a trial court ruled on a summary-judgment motion. *See Marshall v. Sackett*, 907 S.W.2d 925, 929–30 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("We do not consider th[e] [amended] petition because it was not presented to the trial court before the court ruled upon the defendants' motion for summary judgment . . . .").

Barrett also directs us to his affidavit attached to his "Brief in Support" of his "Motion to Vacate or Reform the Order Granting Interlocutory Summary Judgment" to support his assertion that he raised a genuine issue of material fact about his

attorney's ability to bind him to the settlement agreement.[5]  In his affidavit, Barrett testified:

> 3.  My brother, Howard J. Wakefield, III, handled th[e] litigation, engaged counsel for all Defendants, including me, and interfaced with our attorneys almost exclusively.  I never authorized Mr. Bill Underwood to settle the claims asserted by Sam and Claudia Ayers on terms that involved my contributing settlement monies or incurring personal responsibility to pay money.
>
> 4.  To my understanding, no final settlement agreement was ever prepared to formalize the negotiation that resulted in the Rule 11 Agreement that gives rise to the Ayers' breach of contract claim. Certainly, I was never presented with a formal agreement for my review and approval.

However, Barrett filed this affidavit more than eight months after the trial court had granted the Ayerses summary judgment on their breach-of-contract claim.

When a motion to vacate or reconsider a summary-judgment order, or a motion for new trial, is filed after a summary-judgment motion has been heard and ruled upon, the trial court may ordinarily consider only the record that existed when it first heard the motion.  *See Circle X Land & Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Chapman v. Mitsui Eng'g & Shipbuilding Co.*, 781 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, writ denied).  However, a trial court may consider evidence

---

[5]  Barrett did not attach his affidavit to his summary-judgment response, and it was not before the trial court when it granted the Ayerses summary judgment on their breach-of-contract claim.

submitted with a motion to vacate or reconsider, so long as the court "affirmatively indicates" in the record that it accepted or considered the later-filed evidence. *Circle X*, 325 S.W.3d at 863; *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

An order denying a motion to vacate or reconsider does not "affirmatively indicate[]" that the trial court considered later-filed evidence, submitted with a post-summary-judgment motion, when it merely states that the trial court "considered the motion, all responses, and argument of counsel" and "does not state [that the trial court] considered the evidence attached to the motion." *McMahan v. Greenwood*, 108 S.W.3d 467, 499–500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 730–31 (Tex. App.—San Antonio 2014, pet. denied) (order denying motion to reconsider did not "state that the trial court considered the evidence attached to the motion"); *cf. Stephens*, 126 S.W.3d at 134 (trial court "affirmatively indicate[d] that [it] accepted the [later-filed] tape as summary judgment evidence" where it stated at hearing it would "include the evidence offered today in the summary judgment record" and it denied motion for new trial "even taking th[e] [later-filed] evidence into the record" (internal quotations and emphasis omitted)).

Here, the trial court, in its order denying Barrett's motion to vacate, merely stated:  "Having considered said motion as well as all responses and arguments

16

regarding the same, the motion is here[by] DENIED."[6]  Because the trial court *did not* "affirmatively indicate[]" on the record that it accepted or considered the later-filed evidence attached to Barrett's motion to vacate, we cannot consider Barrett's affidavit in determining whether a genuine issue of material fact exists regarding his attorney's authority to bind him to the settlement agreement.  *See PNP Petroleum I*, 438 S.W.3d at 730–31 (appellate court "limited in [its] review" of summary-judgment ruling "to the evidence and arguments presented at the initial summary judgment hearing" where order denying motion to reconsider did not "state that the trial court considered the evidence attached to the motion"); *Young v. Gumfory*, 322 S.W.3d 731, 738 (Tex. App.—Dallas 2010, no pet.) ("[T]he scope of our review is limited to the summary judgment record upon which the trial court's ruling was based.").

We conclude that Barrett did not raise a genuine issue of material fact regarding his attorney's authority to execute the settlement agreement on his behalf.

Barrett next argues that the Ayerses did not prove the formation of a contract with him because "[g]enuine questions of material fact exist as to whether [he] intended to be bound [by] the terms of the [settlement] agreement."  According to Barrett, "[t]here was no meeting of the minds between the Ayers[es] and [himself]"

---

[6]  Also, the trial court did not "affirmatively indicate[]" at the hearing on Barrett's motion to vacate that it would consider his later-filed affidavit in reaching its decision.

because the settlement agreement was merely an "interim document" that failed to "mention . . . how the settlement funds [would be] contributed," state "who would pay the settlement," and "specify the type of release to be executed."[7]

The intent of the parties to be bound is an essential term of a contract. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988); *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Although the parties' intent is often a question of fact, where intent is clear and unambiguous on the face of an agreement, it may be determined as a matter of law. *Foreca, S.A.*, 758 S.W.2d at 746; *John Wood Grp.*, 26 S.W.3d at 16. If a contract is unambiguous, ordinarily the writing alone will be deemed to express the presence or absence of an intent to be bound. *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 158 (Tex. App.—San Antonio 2008, pet. denied); *S & A Marinas, Inc. v.*

---

[7]    In support of his argument, Barrett refers us to his affidavit and copies of certain email communications between his attorney and the Ayerses' attorney. Barrett first presented these items to the trial court with his "Brief in Support" of his "Motion to Vacate or Reform the Order Granting Interlocutory Summary Judgment" and after the trial court had granted summary judgment. As previously explained, because the trial court did not "affirmatively indicate[]" on the record that it accepted or considered the later-filed evidence, we may not consider such evidence on appeal. *See PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 730–31 (Tex. App.—San Antonio 2014, pet. denied). Further, to the extent that Barrett directs us to evidence that only reflects the parties' subjective intent, this is not sufficient to create a genuine issue of material fact concerning a meeting of the minds. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("The determination of a meeting of the minds . . . is based on the objective standard of what the parties said and did and not on their subjective state of mind. Unexpressed subjective intent is irrelevant." (internal citations omitted)).

18

*Leonard Marine Corp.*, 875 S.W.2d 766, 769 (Tex. App.—Austin 1994, writ denied). Only if an agreement is capable of multiple meanings and ambiguous, is there a fact issue rendering summary judgment inappropriate. *John Wood Grp.*, 26 S.W.3d at 16; *Medistar Corp.*, 267 S.W.3d at 158; *S & A Marinas*, 875 S.W.2d at 769.

Here, the settlement agreement, which is signed by the Ayerses' attorney and Barrett's attorney, states as follows:

> . . . [The Ayerses] accept the $140,000 settlement offer.
>
> This will confirm that [the Ayerses] have agreed to settle, release and dismiss all claims they have brought against [ThinAir, Howard, Barrett, and Habel,] in return for [their] agreement to pay [the Ayerses] $140,000, in certified or wired funds, within 10 business days of today.
>
> Appropriate release documents will be executed as soon as possible, but please let this serve as a Rule 11 Agreement regarding the dismissal of [the Ayerses'] claims and the agreed payment of $140,000. . . .

On its face, the settlement agreement is unambiguous. *See Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) ("If contract language can be given a certain or definite meaning, then it is not ambiguous . . . ."); *Lerer v. Lerer*, No. 05-02-00124-CV, 2002 WL 31656109, at *3 (Tex. App.—Dallas Nov. 26, 2002, pet. denied) (not designated for publication) (settlement agreement unambiguous where "[i]t contained all essential terms for the settlement of the dispute and was signed by all parties and their counsel, indicating an intent by the parties to be bound by the contract terms"). And it contains the

essential terms for the settlement of the parties' dispute. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460–61 (Tex. 1995) (material terms of settlement agreement include payment and release of claims); *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 745 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Rule 11 agreement . . . included essential terms for the payment of money in exchange for the performance of some act . . . .").

Further, although the settlement agreement, as noted by Barrett, states that "[a]ppropriate release documents will be executed," it does not provide that the agreement is contingent on or subject to the completion of any such "release documents," and thus does not create a fact issue about Barrett's intent to be bound. *See Boyaki v. John M. O'Quinn & Assocs., PLLC*, No. 01-12-00984-CV, 2014 WL 4855021, at *9 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. denied) (mem. op.) ("Although the settlement agreement contains provisions for future performance (such as the execution of releases and indemnity agreements), the basic terms of the agreement are set forth and, more importantly, the agreement does not contain language indicating that final agreement is conditioned upon anything in the future."); *Gen. Metal Fabricating*, 438 S.W.3d at 745–46 (settlement agreement contained "essential terms," even though it "required the parties to execute a promissory note, a deed of trust, a security agreement, and a financing statement"); *Hardman v. Dault*, 2 S.W.3d 378, 380–81 (Tex. App.—San Antonio 1999, no pet.)

(no fact issue as to parties' intent to be bound where settlement agreement stated "final documents" would be signed (internal quotations omitted)). And the settlement agreement is not rendered "incomplete," as Barrett asserts, because it does not "mention . . . how the settlement funds [would be] contributed."[8] *See Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 247–48 (Tex. App.—Texarkana 2005, no pet.) (neither "how the monies with which the settlement was to be paid would be allocated among the various defendants" nor "the source of the actual money [to be] paid" were essential terms of settlement agreement).

We conclude that Barrett did not raise a genuine issue of material fact about his intent to be bound to the settlement agreement. Accordingly, we hold that the trial court did not err in granting the Ayerses summary judgment on their breach-of-contract claim against Barrett on the ground that they "fail[ed] to conclusively prove formation of a contract with [him]."[9]

We overrule Barrett's second issue.

---

[8] Barrett also asserts that the settlement agreement fails to state "who would pay the settlement." However, the settlement agreement provided that the "clients" of Barrett's attorney, who undisputedly consisted of ThinAir, Howard, Barrett, and Habel, would "pay" the Ayerses $140,000 in exchange for the Ayerses' dismissal of the entirety of their claims.

[9] Having so held, we need not address Barrett's argument that "there is no basis to hold [him] personally liable for the settlement simply by virtue of his alleged status as a shareholder in ThinAir." *See* TEX. R. APP. P. 47.1.

## Lack of Specificity

In his third issue, Barrett argues that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim against him because the settlement agreement is "unenforceable for lack of specificity." Barrett asserts that the settlement agreement lacks two essential terms: (1) "the type of the release to be obtained" and (2) "the identity of the parties responsible for payment of the settlement funds." In response, the Ayerses assert that Barrett has not preserved this issue for appellate review.

As a prerequisite to presenting a complaint for appellate review, the record must show that a complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). Any issue, except legal sufficiency, not expressly presented by the non-movant to the trial court in a written response may not be considered as grounds for reversal on appeal. *See* TEX. R. CIV. P. 166a(c); *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 824–25 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also* TEX. R. APP. P. 33.1(a). The failure to present an issue to defeat summary judgment in the trial court waives the issue on appeal. *D.R. Horton-Tex., Ltd. v. Mkt. Int'l Ins. Co.*, 300 S.W.3d 740, 742–43 (Tex. 2009); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Thus, in the context of summary judgments, a non-movant must "expressly" present, in his written response or answer to a summary-judgment motion, any issues that would defeat the movants' entitlement to summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341, 343 (Tex. 1993); *Frazer*, 4 S.W.3d at 824–25. To "expressly" present an issue, the written answer or response to the summary-judgment motion must fairly apprise the movants and the trial court of any issue that the non-movant contends should defeat summary judgment. *Burruss v. Citibank (S.D.), N.A.*, 392 S.W.3d 759, 761 (Tex. App.—Dallas 2012, pet. denied); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 119–20 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In his response to the Ayerses' summary-judgment motion, Barrett did not raise his argument that the settlement agreement is unenforceable because it lacks essential terms. In his reply brief, Barrett directs us to his "Brief in Support" of his "Motion to Vacate or Reform the Order Granting Interlocutory Summary Judgment," which was filed after the trial court had granted the Ayerses summary judgment, to show that he "sufficiently preserved [his] issue for [appellate] review." However, Barrett may not rely on this post-summary-judgment argument to establish that he preserved the issue for our review. *See Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (argument first raised by non-movant in post-judgment filing did not preserve issue for appeal); *Petroleum Analyzer Co. v.*

*Franek Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at \*14–15 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.) (non-movant did not preserve error on issue where "[t]he first time the record shows that [it] raised th[e] issue is in [its] motion for reconsideration, filed after the trial court granted the summary judgment").

Accordingly, we hold that Barrett has not preserved his third issue for appellate review, and we may not consider it as a ground for reversal.

## Condition Precedent

In his fourth issue, Barrett argues that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim against him because they "failed to prove the occurrence of all conditions precedent."

A condition precedent may be either a condition to the formation of a contract or a condition to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 143 (Tex. App.—Dallas 2012, no pet.). In other words, it may relate to either the formation of a contract or to liability under it. *Hohenberg Bros. Co.*, 537 S.W.2d at 3; *Sharifi*, 370 S.W.3d at 143–44. If there is a condition precedent to the formation of a contract, then no binding contract will arise until the specified condition has occurred or been performed. *See Sharifi*, 370 S.W.3d at 144; *Fred v. Ledlow*, 309 S.W.2d 490, 491 (Tex. Civ. App.—San Antonio 1958, no writ).

24

On the other hand, a condition precedent to an obligation to perform is an act or event which occurs subsequent to the making of a contract and must occur before there is a right to immediate performance and there is a breach of a contractual duty. *Hohenberg Bros. Co*., 537 S.W.2d at 3; *Sharifi*, 370 S.W.3d at 144.  A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied.  *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998); *Sharifi*, 370 S.W.3d at 144.

Barrett asserts that the settlement agreement was "subject to an agreed condition precedent," namely that "ThinAir . . . would receive certain funding, from which the $140,000.00 settlement would be carved out."  And this condition "must [have] take[n] place" in order for him to be obligated "to perform under" the settlement agreement.  The Ayerses assert that "[t]here is absolutely nothing in the Settlement Agreement to indicate that there is a condition precedent to [Barrett's] obligation to perform thereunder."

Texas Rule of Civil Procedure 54 provides:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

TEX. R. CIV. P. 54.

In their third amended petition, the Ayerses alleged that "[a]ll conditions precedent ha[d] occurred or been waived prior to the filing of th[eir] [p]etition." Because the Ayerses generally alleged that all conditions precedent had been performed, the burden shifted to Barrett to specifically deny any conditions precedent. *See id.*; *Young v. Sanchez*, No. 04-10-00845-CV, 2011 WL 4828021, at *5 (Tex. App.—San Antonio Oct. 12, 2011, no pet.) (mem. op.); *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). And only after a specific denial by Barrett, would the Ayerses then have been required to prove the performance of the specifically denied condition precedent. *See* TEX. R. CIV. P. 54; *Betty Leavell Realty Co. v. Raggio*, 669 S.W.2d 102, 104 (Tex. 1984); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 113–14 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Here, although Barrett asserts that he "specifically den[ied] the Ayers[es]' averment that all conditions precedent ha[d] been satisfied," the record does not show that Barrett specifically denied the alleged condition precedent, i.e., ThinAir's receipt of "certain funding." *See* TEX. R. CIV. P. 54. Neither Barrett's live pleading at the time of the summary-judgment hearing, i.e., his October 14, 2013 answer, nor his response to the Ayerses' summary-judgment motion, included a specific denial of the performance of this condition. *See Sharifi*, 370 S.W.3d at 145 (plaintiff "had no burden to prove th[e] condition was satisfied" where neither defendant's "live

26

answer at the time of the motion for summary judgment hearing nor his response to the motion for summary judgment included a denial of the performance of th[e] condition").

As noted above, Barrett's October 14, 2013 answer consisted of only an unsworn general denial and an assertion of three affirmative defenses. *Cf. Mills v. Graham Mortg. Corp.*, No. 05-13-00707-CV, 2014 WL 2916870, at *2 (Tex. App.—Dallas June 24, 2014, no pet.) (mem. op.) (plaintiff "not required to prove any conditions precedent to recover" where defendant filed general-denial answer, "not specifically denying that any condition precedent had not been performed"); *Prohold, Ltd. v. Mitchell Energy & Dev. Corp.*, No. 01-00-01133-CV, 2002 WL 221527, at *4 (Tex. App.—Houston [1st Dist.] Feb. 14, 2002, pet. denied) (not designated for publication) (general denial not sufficient to require plaintiff "to prove that the condition precedent had, in fact, occurred"). And, Barrett, in his response to the Ayerses' summary-judgment motion, did not state that the settlement agreement was subject to any condition precedent or his performance was conditioned upon the receipt of "certain funding" by ThinAir.

Because Barrett did not specifically deny that the purported condition precedent, i.e., ThinAir's receipt of "certain funding," ever occurred, the Ayerses had no burden to prove that this condition was satisfied. *See* TEX. R. CIV. P. 54; *Cmty. Bank & Trust, S.S.B. v. Fleck,* 107 S.W.3d 541, 542 (Tex. 2002) ("Absent a

specific denial, [plaintiff] was relieved of the burden of proving that conditions to recovery had been met."); *Sharifi*, 370 S.W.3d at 147 ("The record does not show these three 'conditions precedent' were specifically denied," therefore, "we cannot agree . . . that [plaintiff] had the burden to prove these alleged conditions precedent were satisfied."). Accordingly, we hold the trial court did not err in granting the Ayerses summary judgment on their breach-of-contract claim against Barrett on the ground that they "failed to prove the occurrence of all conditions precedent."

We overrule Barrett's fourth issue.

## Summary-Judgment Evidence

In his first issue, Barrett argues that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim against him because it "weigh[ed] evidence" when it "consider[ed] the Ayers[es]' motion for summary judgment." He asserts that the trial court "acknowledged having weighed the evidence."

In a summary-judgment proceeding, the trial court's duty is to determine whether any genuine issues of material fact exist, not to weigh the evidence or determine its credibility. *Cummins v. Travis Cty. Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 53 (Tex. App.—Austin 2005, pet. denied); *Trison Inv. Co. v. Woodard*, 838 S.W.2d 790, 792 (Tex. App.—Dallas 1992, writ denied); *Knight v. Caloudas*, 409 S.W.2d 904, 907 (Tex. Civ. App.—Houston 1966, no writ).

This is because the summary-judgment rule does not provide for a trial by deposition or affidavit, and it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *See Spencer v. City of Dall.*, 819 S.W.2d 612, 615 (Tex. App.—Dallas 1991, no writ).

In support of his assertion that the trial court "acknowledged having weighed the evidence" in granting the Ayerses summary judgment, Barrett relies solely upon the following exchange which occurred at the hearing on his "Motion to Vacate or Reform the Order Granting Interlocutory Summary Judgment":

| [Ayerses' counsel]: | He hasn't established, Judge -- Mr. Underwood didn't have authority to settle. There is 130 year presumption, particularly when a judgment is entered, that the Texas Supreme Court says is strong, particularly when a judgment and that Court said -- I like the language of the 1880s -- "When a solemn judgment has been entered based on a Rule 11 agreement based on an agreement of parties." |
| --- | --- |
| | That's what we have. |
| | He cannot overcome it just by saying so. Barrett Wakefield wants to tell this Court because I say so my lawyer didn't have authority to settle on that basis. |
| | Trip Wakefield, Howard Wakefield tried that before. You rejected that argument and entered summary judgment. Two have gone into bankruptcy to further delay, frustrate, this settlement that's been -- |

29

| | |
|---|---|
| [Barrett's counsel]: | Judge, it's exactly the opposite of what he just said regarding the burden of proof. There is a presumption, true. Once that's rebutted by any evidence, the presumption is totally gone. |
| The Court: | What evidence is there? |
| [Barrett's counsel]: | Well, there was the Howard Wakefield affidavit from day one and there is the Barrett -- |
| The Court: | *I already rejected that so I don't think probably -- I didn't find that pervasive so I don't think that I would argue it.* Is that what you're relying upon? |
| [Barrett's counsel]: | I mean, that squarely rebuts -- |
| The Court: | No. |
| [Barrett's counsel]: | -- the presumption -- |
| The Court: | If you could listen. |
| [Barrett's counsel]: | Sure. |
| The Court: | Which is that what you're basing it on is the Howard Wakefield affidavit? |
| [Barrett's counsel]: | That plus the Barrett Wakefield affidavit. |
| The Court: | And is that a new affidavit? Or is it from the preceding? |
| [Barrett's counsel]: | The Barrett Wakefield affidavit is new filed with the motion to modify. |
| The Court: | Am I going to find it resembles the Howard Wakefield affidavit? |

| | |
|---|---|
| [Barrett's counsel]: | They both say that Howard Wakefield was the one managing litigation. He was the one interfacing with the attorneys and that Howard Wakefield authorized the settlement on the understanding that the company was responsible -- |
| The Court: | Isn't that what Howard Wakefield said before? |
| [Barrett's counsel]: | Those points are common to both, yes ma'am. |
| The Court: | Right. And, again, not having read through that aspect of it, but since I signed the order -- the summary judgment at the time how the [Howard] Wakefield affidavit was offered, *I think we can presume that I rejected it being pervasive; don't you think?* Logic would dictate? |
| [Barrett's counsel]: | I guess so. |
| The Court: | I'll take a look at it. As for your request for attorney's fees, Counsel, I'll carry it over until I make a decision in the matter. |

(Emphasis added.)

In his brief, Barrett does not explain how the above exchange, which occurred *more than eight months after the trial court rendered summary judgment*, proves that the trial court improperly weighed evidence in granting the Ayerses summary judgment, nor does he provide any legal authority in support of his assertion. *See* TEX. R. APP. P. 38.1(i) (requiring appellate brief to "contain a clear and concise

argument for the contentions made, with appropriate citations to authorities and to the record"). Instead, Barrett simply states that "[i]t is apparent from the face of the record that the trial [court] weighed the probative value of Howard Wakefield's affidavit" in ruling on the Ayerses' summary-judgment motion.

Barrett further asserts that the Ayerses "led" or "invited" the trial court to weigh evidence in considering their summary-judgment motion. However, even were we to agree that the Ayerses "invited" the trial court to weigh evidence, which we do not, Barrett does not provide any legal authority in support of his assertion that an invitation by the Ayerses actually proves that the trial court did in fact weigh evidence in rendering summary judgment. *See id.*

"Rule 38 requires [a party] to provide [an appellate court] with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also* TEX. R. APP. P. 38.1(i). And "[t]his is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum*, 106 S.W.3d at 128. Appellate issues are "waived if an appellant fails to support his contention by citations to appropriate authority" or "[a] brief fails to contain a clear argument for the contentions made." *Izen v. Comm'n for Lawyer Discipline*, 322 S.W.3d 308, 321–22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (internal quotations omitted).

Finally, Barrett asserts that "the trial court erred in refusing [him] the opportunity to present evidence," namely Howard's affidavit, to "explain the terms" of the settlement agreement. However, the aforementioned exchange, at a hearing held *more than eight months after the trial court's summary-judgment ruling*, does not show that the trial court prohibited Barrett from filing Howard's affidavit for the trial court's consideration. In fact, the record shows that Howard's affidavit was attached to Barrett's timely filed summary-judgment response and no motion to strike the affidavit was filed by the Ayerses or granted by the trial court. *See* TEX. R. CIV. P. 166a(c); *cf. Birnbaum v. Atwell*, No. 01-14-00556-CV, 2015 WL 4967057, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, pet. denied) (mem. op.) (trial court ruled on objections to summary-judgment evidence where it "heard argument and documented its express rulings . . . in the reporter's record"); *Pegasus Transp. Grp., Inc. v. CSX Transp., Inc.*, No. 05-12-00465-CV, 2013 WL 4130899, at *2 n.2 (Tex. App.—Dallas Aug. 14, 2013, no pet.) (mem. op.) (considering evidence on appeal where, although motion to strike filed, trial court did not explicitly rule on objections).

Howard's affidavit was before the trial court at the time of the summary-judgment hearing, and there is no support in the record for Barrett's assertion that the trial court refused to consider the affidavit when it rendered summary judgment. *See* TEX. R. CIV. P. 166a(c) (summary judgment shall be

rendered on evidence on file at time of hearing); *Wuxi Taihu Tractor Co. v. York Grp., Inc.*, No. 01-13-00016-CV, 2014 WL 6792019, at *11 (Tex. App.—Houston [1st Dist.] Dec. 2, 2014, pet. denied) (mem. op.) ("A trial court considers the pleadings and summary-judgment evidence on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." (internal quotations omitted)).

Accordingly, we hold Barrett has waived his first issue, and we may not consider it as a ground for reversal.

## Mutual Mistake

In his fifth issue, Barrett argues that the trial court erred in granting the Ayerses summary judgment on their breach-of-contract claim against him because he "produced more than a scintilla of probative evidence to raise a genuine issue of material fact as to whether the [settlement] agreement m[ust] be set aside on the basis of mutual mistake."

The Ayerses moved for summary judgment on Barrett's affirmative defense of mutual mistake, asserting that there is no evidence of mutuality. *See* TEX. R. CIV. P. 166a(i); *see also Hardy v. Bennefield*, 368 S.W.3d 643, 650 (Tex. App.—Tyler 2012, no pet.) ("Mutual mistake is an affirmative defense that must be pleaded and proved."). Under the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will

34

be avoided. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *Winegar v. Martin*, 304 S.W.3d 661, 667 (Tex. App.—Fort Worth 2010, no pet.). A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake. *See Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd). To prove a mutual mistake, the evidence must show that both parties were acting under the *same* misunderstanding of the *same* material fact. *Winegar*, 304 S.W.3d at 668; *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Barrett asserts that, "[a]t the time the settlement negotiations were taking place, and at the time the settlement was executed, the parties believed that funding sufficient to complete the settlement was imminent," i.e., they were operating under a "mistaken belief that the settlement would be funded by a particular source," to be received by ThinAir.

To establish that he raised a genuine issue of material fact on mutual mistake, Barrett directs us to three pieces of evidence: (1) a letter from his attorney, sent over a month after the parties had executed the settlement agreement, stating that "[his] clients ha[d] instructed [him] to withdraw the settlement" because "[a]t the time the

35

agreement was reached, ThinAir believed that funding was coming within a matter of days, and this has yet to occur"[10]; (2) email communications between the Ayerses' attorney and Barrett's attorney discussing the forthcoming transfer of settlement funds to the Ayerses[11]; and (3) Howard's affidavit, in which he testified:

> 2.     On October 9, 2012, I attended a meeting in which Sam Ayers was a participant. In that meeting, I advised Mr. Ayers and other parties that ThinAir . . . was in the process of obtaining additional funding, and that further updates would be forthcoming. When I authorized my attorney to enter into a settlement agreement on behalf of ThinAir . . . , it was under the assurance that the additional funding would be received by ThinAir . . . prior to the designated payment date that was authorized.

---

[10]     This letter was attached to the Ayerses' summary-judgment motion, and, although it was unauthenticated, unsworn, and unaccompanied by an affidavit, no objection was raised in the trial court concerning the letter's lack of authentication. *See David v. David*, No. 01-09-00787-CV, 2011 WL 1326222, at *3–4 (Tex. App.—Houston [1st Dist.] Apr. 7, 2011, no pet.) (mem. op.) (considering unauthenticated letter when reviewing trial court's summary-judgment ruling where party failed to object to letter's lack of authentication); *Watts v. Hermann Hosp.*, 962 S.W.2d 102, 105 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (objection to authentication of hospital discharge records attached to summary-judgment motion waived because not raised in trial court).

[11]     Several of the email communications, cited by Barrett in support of his affirmative defense of mutual mistake, were not filed with Barrett's summary-judgment response and were not before the trial court when it granted the Ayerses summary judgment on their breach-of-contract claim. Instead, this evidence was first filed with Barrett's "Brief in Support" of his "Motion to Vacate or Reform the Order Granting Interlocutory Summary Judgment," more than eight months after the trial court had granted summary judgment. As previously discussed, when a trial court does not "affirmatively indicate[]" on the record that it accepted or considered evidence filed after its summary-judgment ruling, we are prohibited from considering that evidence in determining, on appeal, whether a genuine issue of material fact was raised. *See PNP Petroleum I*, 438 S.W.3d at 730–31.

3.	As of March 13, 2013, the funding on which this settlement was premised has yet to be received.  It is, however, anticipated that it will be received any day.

At most, the letter from Barrett's attorney noting his clients' withdrawal from the settlement agreement and Howard's affidavit constitute evidence only of ThinAir and Howard's beliefs that the $140,000 required to be paid to the Ayerses under the settlement agreement would come from "additional funding" to "be received by ThinAir."  However, neither the letter nor Howard's affidavit constitutes evidence that the Ayerses, or even Barrett, suffered from this same mistake of fact.[12]  *See Walden*, 97 S.W.3d at 326 (to prove mutual mistake, evidence must show both parties acting under *same* misunderstanding of *same* material fact); *cf. Samson Explor., LLC v. T.S. Reed Props., Inc.*, No. 09-13-00366-CV, 2015 WL 6295726, at *13–15 (Tex. App.—Beaumont Oct. 22, 2015, pet. filed) (mem. op.) (trial court did not err in granting no-evidence summary judgment where defendant "did not present any evidence showing that . . . claimants were acting under any misunderstanding" and evidence "show[ed] that the mistake was [defendant's] alone"); *City of The Colony*, 272 S.W.3d at 735–36 (plaintiff produced no evidence to support mutual-mistake element, requiring both parties to be mistaken about common

---

[12]	We note that although certain email communications, attached to Barrett's summary-judgment response, between the Ayerses' attorney and Barrett's attorney, may be considered by this Court on appeal, they also do not constitute evidence of mutual mistake.

intention, where evidence "demonstrate[ed] [plaintiff's] own thoughts about the parties' various responsibilities under the Contract," but did not show other party "likewise suffered from a mistake of fact regarding any of those responsibilities"); *N. Nat. Gas Co. v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex. App.—El Paso 2004, no pet.) (defendant failed to establish fact issue precluding summary judgment where it "offered evidence showing its own beliefs about the purpose of the agreement," but did not offer "evidence that [other entity] likewise suffered from a mistake of fact").

Accordingly, we hold that the trial court did not err in granting the Ayerses summary judgment on Barrett's affirmative defense. *See* TEX. R. CIV. P. 166a(i); *Winegar*, 304 S.W.3d at 667–69 (trial court did not err in granting no-evidence summary judgment where defendant failed to raise genuine issue of material fact on mutual mistake).

We overrule Barrett's fifth issue.[13]

---

[13]    In his reply brief, Barrett moves to strike "certain portions" of the Ayerses' Statement of Facts contained in their appellees' brief on the ground that these statements "contain legal and factual conclusions that are argumentative, misleading, prejudicial, and/or are not supported by any facts in the record." We deny Barrett's motion to strike and note that we have not considered any factual assertions not supported by the record. *See Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006) (appellate courts "do not consider factual assertions that appear solely in briefs and are not supported by the record").

**Howard's Appeal**

Howard, acting pro se, has also filed a notice of appeal in this case, seeking to challenge the trial court's rendition of summary judgment in favor of the Ayerses on their breach-of-contact claim against him. In his brief, Howard raises the following issue on appeal: "[W]hether the purported . . . settlement agreement should be legally enforced against [him] . . . considering the fact that . . . the initial lawsuit . . . was done illegally."[14] Howard's brief is largely deficient and fails to comply with Texas Rule of Appellate Procedure 38.1.[15] *See* TEX. R. APP. P. 38.1(c), (d), (g), (h), (i), (j), (k).

On appeal, a pro se litigant must properly present his case. *Hopes-Fontenot v. Farmers New World Life Ins. Co.*, No. 01-12-00286-CV, 2013 WL 4399218, at *1 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op.); *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied). And although we liberally construe pro se pleadings and briefs, a pro se litigant is still required to comply with applicable rules and held to the same standards as licensed attorneys. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005);

---

[14] We note that Howard raises this issue in the section of his brief titled "Statement Regarding Oral Argument."

[15] Howard attaches to his brief a "Legal Opinion Letter" that is not contained in the appellate record and which we cannot consider. *See Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("We cannot consider documents attached to an appellate brief that do not appear in the record.").

39

*Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 723 (Tex. App—El Paso 2011, no pet.) (pro se litigants not exempt from rules of procedure because to do otherwise "could give a pro se litigant an unfair advantage over litigants represented by counsel" (emphasis omitted)).

A pro se appellant bears the burden of discussing his assertions of error and directing the appellate court to the portions of the record that support his complaints. *Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied). An issue that is inadequately briefed is waived on appeal, as this Court has no duty to search a voluminous record without guidance from an appellant to determine whether an assertion of reversible error is valid. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994); *Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 36 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Thompson v. HSBC Bank USA*, No. 01-14-00589-CV, 2015 WL 3981799, at *3 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op.) (issue waived where appellants did not "present[] a cogent argument to support [their] issue"). We cannot remedy deficiencies in a litigant's brief and argue his case for him. *Strange*, 126 S.W.3d at 678.

Accordingly, we hold that Howard has waived any complaints regarding the trial court's order granting the Ayerses summary judgment on their breach-of-contract claim against him.

## Frivolous Appeal

In their appellees' brief, the Ayerses contend that Howard's appeal is frivolous and ask this Court to award them, "[a]t a minimum," $12,519.57, i.e., the amount of "reasonable attorney's fees and related expenses incurred [by them] as a result of Howard Wakefield's appeal." *See* TEX. R. APP. P. 45 (damages for frivolous appeals in civil cases).

After considering the record, briefs, and other papers filed in this Court, we may award a prevailing party "just damages" if we objectively determine that an appeal is frivolous. *Id.*; *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that his case could be reversed. *Smith*, 51 S.W.3d at 381. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* And rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

41

After a review of the record, briefing, and other papers filed in this Court, we deny the Ayerses' request for damages.

## Conclusion

We affirm the judgment of the trial court, deny the Ayerses' request for damages under Texas Rule of Appellate Procedure 45, and deny Barrett's motion to strike "certain portions" of the Ayerses' appellees' brief.


Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Bland.